# Wytheville.

## BUNTIN & WIFE v. CITY OF DANVILLE.

JUNE 11, 1896.

Absent, Harrison, J.

1. DEDICATION—*Definition—How made—When Complete and Irrevocable.*— Dedication is an appropriation of land by its owner for the public use. It is not within the statute of frauds, and need not be by deed or other writing, but may be effectually done by verbal declaration. It may be express or implied, and will be implied from long use by the public of the land claimed to be dedicated. The intent is the vital principle, and the dedication may be made in every conceivable way that such intention may be manifested. When such intention has been unequivocally manifested, and there has been acceptance by competent authority, or such long use by the public as to render its reclamation unjust and improper, the dedication is complete; and when complete it is irrevocable.

2. DEDICATION—*Obstruction—Encroachment—Statute of Limitations—Case at Bar.*—When dedication has become complete and irrevocable, no obstruction of the subject of the dedication, and no encroachment upon it by the original owner or any one else, for any length of time, will affect the dedication, or impair the rights of the public to it, unless the land so dedicated has been abandoned by the public, or by the proper authority. Time does not run against the State, nor bar the right of the public. In the case at bar the dedication was complete, and there has been no abandonment.

3. JURY TRIALS—*Extraneous Influences—Coercion to Verdict—Time to be kept Together—Expressions by Trial Judge.*—Trial by jury is a sacred right and should be sedulously guarded. The jury should not only be kept from all extraneous influences in reaching their verdict, but the court itself should be careful not to trench upon their province. They should not be coerced, by threat or otherwise, into finding a verdict; for a verdict resulting from coercion could not be allowed to stand. The verdict should be the untrammeled expression of the concurrence of individual judgments. But a reasonable time to be

determined by the circumstances of the case, should be allowed the jury for the performance of their duty, and they should be kept together until the trial court is satisfied that they have made an honest effort to agree, and cannot from a conscientious difference of judgment. Great latitude is allowed the trial court as to the length of time the jury shall be kept together, and, unless it is a clear case of abuse of such discretion, the verdict will not be disturbed on the ground of coercion. But it is the safer and better practice for the trial court to refrain from any expression of opinion, which may be claimed to savor of threat or coercion, as to the time the jury will be kept together if a verdict is not sooner rendered.

4. JURY TRIALS—*Questions by Jury—Answer by Court—Presence of Counsel.*—Counsel engaged in a case should, according to the better practice, be apprised of any question propounded by the jury to the court that may affect the case before an answer is returned by the court, but a failure to apprise them will not vitiate the verdict if the answer is correct.

Argued at Richmond.    Decided at Wytheville.

Error to a judgment of the Corporation Court of the city of Danville rendered July 15, 1893, in an action of ejectment wherein the plaintiffs in error were the plaintiffs, and the defendant in error was the defendant.

*Affirmed.*

This was an action of ejectment to recover a small strip of land on Main street in the city of Danville. After the evidence had been introduced, both plaintiffs and defendant tendered to the court instructions to be given to the jury. The court refused to give the plaintiffs' fourth instruction, and gave the five instructions tendered by the defendant, to which action of the court the plaintiffs excepted. The instructions were as follows:

*Plaintiffs' Fourth Instruction (refused).*

The court instructs the jury that to constitute a dedication of private property as a street, the owner thereof must

have intentionally dedicated the same by voluntary act, or that the public has used as a common highway the property for such a length of time as that the law presumes acquiescence in such use by the owner of the property.

But that the exercise of ownership or control over the property claimed to have been dedicated by acquiescence in its use and occupation, such as the occupancy of, or the interposition of obstacles and barriers by the original owners of the property to the general and public user of the same, precludes and refutes the idea of dedication and acquiescence by the owner in the use by the public; and the law will not in such cases presume a dedication of the property.

*Instructions Tendered by the Defendant and Given by the Court.*

1. If the jury shall believe from the evidence that the defendant corporation has been in peaceable, quiet, and uninterrupted possession of the land in question for fifteen years or more, claiming it as a street under color of title, either by grant, contract or dedication from the owners thereof, and exercising acts of ownership thereover by repairing, filling in, or otherwise, they should find for the defendant corporation.

2. If the jury believe from the evidence that any owner of the fee of the land in question at any time before the same passed to T. J. Lee, dedicated or appropriated the land in question for a street, and the same was accepted as a street by the corporate authorities of Danville, then such dedication was irrevocable, and the jury should find for the defendant. And the court further instructs the jury that such dedication of the land may be inferred from any acts of the owner or circumstances evidencing an intent on the part of the owner so to dedicate, accompanied by the use of the land by the public as a highway for a long space of time, and the acceptance by the corporation should be inferred

from the exercise by the corporate authorities of acts of control and management such as repairing, grading, or otherwise treating the land as a public street.

3. That when, at the time of the purchase of real estate, there is a road or right of way used by the public, such as a public highway, or a road used so long that there may be a presumption of a dedication to the public, the purchaser takes the land subject to such right.

4. That the right of the plaintiffs to recover in this case rests on the strength of their own title, and they cannot recover by showing defects in the title of the defendant.

5. That the acquiescence of the owner of land in the free use and enjoyment of the same by the public for twenty years as a street or highway will in itself afford sufficient evidence of an intention to dedicate the land as a street or highway.

*Withers & Barksdale* and *Peatross & Harris*, for the plaintiffs in error.

*George C. Cabell*, for the defendant in error.

RIELY, J., delivered the opinion of the court.

This is an action of ejectment to recover a very narrow strip of land.

The plaintiffs claim that the legal title to it is in the female plaintiff through a long chain of title, while the defendant insists that it is a part of its main street, as extended, by virtue of a dedication of it as a public road, leading into the town by the original owner of the land, and that such dedication was made prior to the commencement of the title of the female plaintiff, and of those through whom she claims, as well as prior to the enlargement of the corporate limits of Danville, and the extension of Old (now Main) street.

The evidence negatives any idea that the road was the result of condemnation by the court, but it does appear from the proceedings of the County Court of Pittsylvania county, as contained in the record, that the court recognized it as a public road, and appointed a surveyor to keep it in repair as far back as 1825.

While the record shows that the road was not the result of condemnation, it does not disclose when it was first dedicated by the owner of the soil, or opened by him to the public. Nevertheless, it clearly shows that it existed as a highway prior to the commencement of the title under which the plaintiffs claim the land in controversy.

" The principle of dedication by the act of the owner of land," said Judge Staples, in *Harris's Case,* 20 Gratt. 833, " is now almost universally recognized as a part of the common law in this country." Dedication is an appropriation of land by its owner for the public use. It may be express or implied. It may be implied from long use by the public of the land claimed to have been dedicated. Dedication is not required to be made by a deed or other writing, but may be effectually and validly done by verbal declarations. The intent is its vital principle, and the dedication may be made in every conceivable way that such intention may be manifested. It must, however, be manifested by some unequivocal act, and is not effectual and binding until accepted. When the intention of the owner to make the dedication has been unequivocally manifested, and there has been acceptance by competent authority, or such long use by the public as to render its reclamation unjust and improper, the dedication is complete. *City of Richmond* v. *A. Y. Stokes & Co.,* 31 Gratt. 713; *Talbott* v. *R. & D. R. R. Co.,* Id. 685; *Harris's Case, supra; Kelly's Case,* 8 Gratt. 632; *Hall* v. *McLeod,* 2 Met. (Ky.) 98; *Harding* v. *Jasper,* 14 Cal. 642; *Morgan* v. *Railroad Co.,* 96 U. S. 716; *Dovaston* v. *Payne,* 2 Smith's Lead. Cas. 213, and notes thereto; *State* v. *Trask,* 27 Amer.

Dec. 554, and the note thereto; 2 Greenleaf on Ev. sec. 662; and Wash on Easements 180 and 184.

And when it is complete, it is irrevocable. No obstruction of the subject of the dedication, or encroachment upon it by the original owner of the soil, or by any one else will affect the dedication, or impair the right of the public to its benefits, unless the land so dedicated has been abandoned by the public, or by the proper authority. *Harris's Case, supra; Skeen* v. *Lynch,* 1 Rob. 186; *City of Cincinnati* v. *The Lessee of White,* 6 Peters 431; *Adams* v. *Railroad Co.,* 11 Barb. 414; *Cook* v. *Harris,* 61 N. Y. 448; *City of Dubuque* v. *Maloney,* 9 Iowa 455; Washburn on Easements, 188 and cases there cited; and Elliott on Roads and Streets, 132.

W. I. Lewis was the original owner of the land now owned by the female plaintiff, and also of much other land adjoining it. Upon the extension of the corporate limits of the town of Danville, a part thereof at least was taken into the corporation, and that now owned by the said plaintiff became lot No. 118 on the plat of the town. It was situate on the said public road, and was laid off so as to front 164 feet and eight inches on Old or Main street. The lot was afterwards sold by Lewis in parcels to different persons.

On January 10, 1823, he sold one parcel, fronting twenty-three feet and six inches on Old or Main street, to Samuel B. and Thomas Rawlins; on January 15, 1823, he sold another parcel adjoining it on the lower side, and fronting forty-seven feet on the said street, to John B. Roy; he next sold, on February 24, 1823, the parcel lying between that last mentioned and the road, fronting seventy feet eight inches on the said street, to James M. Williams, Sr. and on December 30, 1823, he sold the remainder of lot No. 118, fronting twenty-three feet and six inches, to Anthony D. Haden, which several parcels aggregate 164 feet and eight inches, the entire front on Old or Main street of lot 118.

The road referred to had been dedicated by the owner of

the soil to the public, and was used by it before he sold any of the parcels of land constituting lot 118; and in the conveyance to James M. Williams, Sr., the original grantee under whom the plaintiffs claim, of the parcel situate on the road, W. I. Lewis, the grantor, expressly reserved the road from the operation of the conveyance. The road was also accepted, as we have seen, by the court of the county as one of its highways. Its dedication was complete, effectual, and valid.

The real question, then, in the case, is narrowed down to this: Whether the disputed ground is a part of lot 118, or a part of the land dedicated to the public as a highway?

All the parcels of land constituting lot 118, which were so sold off by Lewis, became, by subsequent conveyances, the property of Elsa B. Williams and her husband, James M. Williams, Jr., who, with her trustee, R. W. Lyles, sold and conveyed the same, on October 4, 1864, to W. B. Millner. In describing the property, it was stated in this deed that it fronted on Old or Main street 175 feet, when in fact, as has been shown, lot No. 118 had a frontage of only 164 feet and eight inches. This glaring error is no doubt the origin of this controversy.

The property so conveyed to W. B. Millner was sold by him, and after passing through various hands, was acquired by Ann M. Keen, who, together with John K. Millner and wife, subsequently sold and conveyed it to Thomas J. Lee. He devised it to his widow, the female plaintiff, who afterwards married W. H. Buntin.

In all of the conveyances made of the property after the deed from Elsa B. Williams and others to W. B. Millner, except in the conveyance to Thomas J. Lee, it was described as fronting 175 feet on Main street, and the error in the deed to W. B. Millner thereby perpetuated. But in the deed from Ann M. Keen to Lee, while it was described as fronting on Main street, the number of feet was left blank. This was probably due to a fact that will be hereafter adverted to.

A wooden or frame hotel was first erected on the part of lot 118 which adjoins the road, and was sold by Lewis to James M. Williams, Sr. This was burned down in 1854, and was replaced the next year by a brick structure. This was while Elsa B. Williams and her husband owned and resided upon the property.

It was proved by James M. Williams, a son of Elsa B. Williams and James M. Williams, Jr., who was himself a son of James M. Williams, Sr., that he resided with his parents when the new hotel was erected in 1855, and that its walls were laid exactly upon the line of the foundation of the old hotel. This fact was also established by John C. Neal, a nephew of James M. Williams, Jr., and a witness for the plaintiffs. It was further proved by Neal that he was present when the workmen commenced to lay the foundation of the new building; that the foundation of the old hotel was taken out, and the brick cleaned; that his uncle, James M. Williams, Jr., pointed out to the workmen the boundary line of the property, stating that there was its limit; and that the brick wall of the new hotel was laid directly upon this line. He also testified that he knew the old hotel well, and that the street was no wider now than it had always been.

The testimony of these two witnesses, who were so familiar with the property, and who had such excellent opportunities to learn its boundaries, would seem conclusive against the contention that any part of lot 118 is encroached upon by the extension of Main street, and to establish that the street merely includes the site of the old public road. This was a question for the jury, and their verdict was in accordance with this view.

It was shown in evidence that there was a porch to the old hotel which projected several feet beyond the wall, and over the ground now in dispute, and that when the new hotel was erected it was built with three verandas, one to

each story, but considerably narrower than the porch to the old hotel. These verandas likewise projected beyond the wall, and over the ground sued for. Both the old porch and the new veranda were constructed upon the wall of the building, and were not built upon the ground; and were high enough above the ground, except near Main street proper, for a person to walk under them. Much reliance was placed by the counsel of the plaintiffs upon the circumstance that these structures projected over the strip of ground in dispute, and so obstructed it as to refute the claim of the defendant of its dedication as a part of the public road.

It is a sufficient answer to this view that the dedication of the road took place prior to the sale of the lot to the original grantee under whom the plaintiffs claim, and before the erection of the original building upon it; and having been once made, no encroachment or obstruction could impair the right of the public to its free and unrestricted use. The dedication was irrevocable even by the original owner, unless the road was subsequently abandoned, and certainly no subsequent grantee from whose title the road was expressly excepted, or any one claiming under him, could so obstruct the road so dedicated as to limit the right of the public to its use. Moreover, no such encroachment or obstruction could any more affect the right of the public than the awnings, windows, and verandas that are to be seen projecting over the side-walks from houses in every city. Nor does it matter for how long a time the porch or veranda so hung over the ground or obstructed it. No title by adverse possession could be acquired to it. Time does not run against the State, nor bar the right of the public. *Taylor's Case,* 29 Gratt. 780; *Norfolk City* v. *Chamberlaine,* Id. 534; *Yates* v. *Town of Warrenton,* 84 Va. 337; *Com.* v. *Morehead,* 118 Pa. St. 344; *Com.* v. *McDonald,* 16 Sergt. & R. 390; *Com.* v. *Alburger,* 1 Whart. 469; *Driggs* v. *Phillips,* 103 N. Y. 77; *St.*

*Vincent Female Orphan Asylum* v. *City of Troy,* 76 N. Y. 108; *Horey* v. *Village of Haverstraw,* 47 Hun. 356; *Cross* v. *Mayor of Morristown,* 18 N. J. Eq. 305; *Hoadley* v. *San Francisco,* 50 Cal. 265; and 2 Dillon on Mun. Corp. (3 Ed.) sec. 675.

If what has been already said were not sufficient to show that the plaintiffs are without any right to the land sued for, another fact was proved which puts the matter beyond the pale of controversy. While Ann M. Keen owned the property, John K. Millner, her son-in-law and general agent, claimed for her the ground over which the veranda projected, but agreed to relinquish such claim, or give the walkway up to the wall of the hotel, if the city would make certain repairs to the door and window of the basement of the hotel so that the basement could be used. This was agreed to. The veranda was removed; the repairs made, and the city took actual possession of the ground up to the wall of the hotel as a part of the street. Whether this is to be considered a confirmation of the original dedication, or a dedication anew of the ground to the public use, the effect is the same. If any doubt existed before as to the prior dedication of the disputed ground, this fact should have put an end to any further controversy.

The city so possessed the ground as a part of the street when Ann M. Keen and John K. Millner and wife conveyed the property to Lee. And it is specially significant that in their deed they did not describe the property as fronting 175 feet on Main street, as was the case in the deed to Ann M. Keen and several prior conveyances, to which we have adverted or convey any specific number of feet, but simply described it as fronting on and bounded by Main street on the south, and "on the East side by the extension of Main street proper to the bridge," which extension was the old public road, inclusive of the disputed ground. It is perfectly clear that Lee never acquired the right to any land

beyond the east wall of the hotel, and that the plaintiffs have no title whatever to that in controversy.

It only remains to consider the several bills of exception.

The exception to the refusal of the court to set aside the verdict and grant the plaintiffs a new trial has been virtually disposed of. Enough has been already said to show that the court did not err in overruling such motion.

Exception was taken to the refusal of the court to give to the jury the fourth instruction asked for by the plaintiffs. The instruction announced correctly the principle of law in the abstract, but it was without evidence to support it. There was no evidence of the interposition of any obstacle or barrier to the use of the ground by the public, or of any occupation of it, except such as was caused by the overhanging porch and veranda referred to. And this was not the act of Lewis, the original owner of the property, and who expressly reserved the road as a highway, but that of a subsequent owner after the dedication and acceptance of the road. So that even if the porch or veranda could be considered an occupancy of the ground, it was not an occupancy or obstruction by the original owner of the soil, but of one who never had any title to the freehold in the road, and could not gain by encroachment or occupancy any right as against the public.

The instruction was also obnoxious to the objection that it was too general, and in nowise directed the attention of the jury to the obstacles and barriers relied on to refute the claim of a dedication of the road.

The five instructions given by the court correctly stated the law, and were properly given.

Further exception was taken to the admission of the testimony of John K. Millner and Chas. K. Ballou in relation to the gift by Millner, agent for Ann M. Keen of the ground now in dispute, as a sidewalk, up to the wall of the hotel, if the town would fix the window and entrance to the

basement. The ground of the objection is that the agreement or the evidence of the gift was not in writing. The agreement was simply a dedication of the ground to the public, and the exception is based upon a mistaken view of the law. It is well settled that a dedication is not within the statute of frauds. As hereinbefore stated, it may be as effectually and validly done by verbal declarations as by deed or other writing. *Skeen* v. *Lynch, supra; City of Richmond* v. *A. Y. Stokes & Co., supra; Godfrey* v. *City of Alton,* 12 Ill. 29; *Warren* v. *Town of Jacksonville,* 15 Ill. 236; *Hall* v. *McLeod,* 2 Met. (Ky.) 104; *City of Cincinnati* v. *White, supra; Hunter* v. *Trustees of Sandy Hill,* 6 Hill, 407; *Cook* v. *Harris,* 61 N. Y. 448; *Pearsall* v. *Post,* 20 Wend. 111; S. C., 22 Wend. 444; *Curtis* v. *Keesler,* 14 Barb. 521; *Harding* v. *Jasper, supra;* Washburn on Easements, 188; and Elliot on Roads and Streets, 90.

The fourth bill of exceptions is in regard to certain remarks made by the court to the jury, which, it is claimed, were in the nature of a threat, and calculated to coerce the jury into rendering a verdict. After the jury had been considering of their verdict for a day and a half, they were brought into the court preparatory to an adjournment at the close of the second day, and the usual inquiry being made of them as to whether or not they had agreed upon a verdict, they replied in the negative; whereupon the court remarked to them that " he wished them to decide the case; that they were as competent to do it as any other jury; that this was the second trial of the case, and that they would be kept together until the end of the term unless they did; that the case was a perfectly plain one, and ought to be decided in five minutes after reading the instructions and applying them to the facts." It thereupon discharged them until the next morning with the usual injunction not to converse with any one on the subject. The record is silent as to the time that thereafter elapsed before the verdict was rendered.

Trial by jury is a sacred right, and should be sedulously guarded. The jury should not only be kept from all extraneous influences in reaching their verdict, but the court itself should be careful not to trench upon their province. A verdict resulting from coercion could not be allowed to stand. It must be the untrammeled " expression of the concurrence of individual judgments." But while this is true, it is a maxim of the law that there should be an end of litigation, and jurors should always agree, if possible. It is particularly desirable that they should agree, if they can conscientiously do so, where there has been one or more mistrials, as was the case here. They should honestly endeavor to reconcile their differences of opinion, though not to the extent of surrendering their convictions. All who are familiar with jury trials know that jurors are prone to report to the court their inability to agree, but not being discharged, often render, in a reasonable time thereafter, a verdict whose justice demonstrates, as was the case here, the propriety of the action of the court in keeping them together longer. It is the duty of the court to keep them together until it is satisfied that they have made an honest effort to agree, and that their inability to do so is due to a conscientious difference of judgment. Where their differences render it necessary, a reasonable time must be taken for the performance of the important duty submitted to the jury. What is reasonable time must depend upon the circumstances of each case, and be left in a very great measure to the discretion of the trial court. And unless it is a clear case of an abuse of such discretion, the verdict, for the cause we have been considering, should not be disturbed. And while we are of opinion that the remarks of the court, which are excepted to, do not justify the construction put upon them by counsel, or the claim that the large discretion necessarily reposed in the trial court was abused in this instance, yet it is proper to add that it is better and safer to

refrain from any expression of opinion, which may be claimed to savor of threat or coercion, as to the time the jury will be kept together unless a verdict is sooner rendered.

The fifth bill of exceptions relates to the action of the court in replying to a question from the jury without informing counsel until after the rendition of the verdict. The question of the jury, and the answer of the court, were both in writing, and are set out in the record. The reason given by the court for not informing counsel before replying to the question was that they were engaged in arguing another case to a jury. Still it is the better practice to apprise counsel of any question asked by the jury that may affect the case before an answer is returned by the court. Argument or other proceeding can always be suspended for a few moments without serious interruption. This course should always be pursued, and ground for an exception of this charracter be avoided. The answer returned by the court to the question propounded by the jury correctly stated the law, and the irregularity excepted to is not sufficient to vitiate a verdict that is plainly right upon the evidence and the law applicable thereto.

For the foregoing reasons, the judgment of the Corporation Court must be affirmed.

*Affirmed.*