# Staunton

## City of Norfolk v. H. Clarkson Meredith, Et Al.

September 11, 1963.

Record No. 5622.

Present, Eggleston, C. J., and Spratley, Buchanan, Snead, l'Anson and Carrico, JJ.

The opinion states the case.

*Virgil S. Gore, Jr., Assistant City Attorney (Leonard H. Davis, City Attorney*, on brief), for the appellant.

*Eastwood D. Herbert (Herbert & Bohannon*, on brief), for the appellees.

CARRICO, J., delivered the opinion of the court.

H. Clarkson Meredith and William B. Meredith, II, the complainants, filed a bill for declaratory judgment (Code, § 8-578) against the city of Norfolk, praying that the court confirm their title to a forty foot strip of land adjacent to their property and also determine that they were entitled to building permits for the erection of buildings thereon.

In its answer, the city alleged that there was a perpetual right of way in and over the forty foot strip of land, by virtue of a deed from Robert L. Bell to the county of Norfolk, dated May 1, 1936, and that the land in question had become a part of the city by annexation in 1955. The city prayed that the court adjudicate, "that it has title to the forty foot strip of land."

The trial court heard the evidence and, in a written opinion and a final decree, ruled that the deed from Bell to the county was a deed of dedication granting to the public the right to use the forty foot strip for highway purposes; that there had been no acceptance of the dedication by the public; that all public claims to the strip had been abandoned; that the complainants held title thereto free of any right of the city to make use thereof for highway purposes, and that the complainants were entitled to build on the strip, subject to the city's building code and ordinances. We granted the city an appeal.

The evidence discloses that Robert L. Bell was, in 1936, the owner of a tract of land in Norfolk county, located on the southerly side of an electric railroad right of way, and separated from the public highway, now Chesapeake boulevard, by the railroad.

In May, 1936, Bell and his wife executed a deed in which, "in consideration of One Dollar ($1.00), and for other considerations not

herein expressed" they conveyed to the county, with general warranty, "a perpetual right of way" over a forty foot strip of land adjacent to the railroad right of way along the front of their property a distance of approximately fifteen hundred feet. The deed provided:

"The right of way herein granted is to be used for and as a public highway only, and the said grantors, their heirs and assigns are to have the usual rights therein of abutters upon a public highway, together with reversionary right to the entire said road-bed in case of its abandonment."

The deed was recorded among the county land records on May 13, 1936.

In January, 1941, Bell and his wife conveyed to Norland Housing Corporation their property to the south of the forty foot strip, and in March, 1941, by a deed of correction, conveyed the same property to Norland and included all of their right, title and interest in and to the forty foot strip.

In March, 1942, Norland conveyed the property south of the railroad right of way to Norview Heights, Incorporated, of which the complainant, H. Clarkson Meredith, was president. In 1943, the same property was conveyed by Norview to Mrs. Meredith and in 1946 by her to Mr. Meredith. In each of the deeds in these conveyances the property was described as being bounded on the north by the railroad. No mention was made of the forty foot strip, as such, and there was no reference to the deed from Bell to the county.

In May, 1950, H. Clarkson Meredith learned, for the first time, of the possible existence of a right of way over the forty foot strip. He had his attorney investigate the matter and a deed was secured from Bell conveying his reversionary rights to the strip of land to Meredith.

In August, 1952, Meredith and his wife conveyed to the Hampton Roads Sanitation District Commission a tract of land which included a parcel within the limits of the forty foot strip. The Commission erected a pumping station on its tract.

In August, 1957, H. Clarkson Meredith and his wife conveyed to William B. Meredith, II, one of the complainants, a tract of land which also included a parcel within the limits of the forty foot strip.

On January 1, 1955, the portion of the county in which the land in controversy was located was annexed to the city by proper proceedings.

In 1942, when the corporation of which H. Clarkson Meredith was president acquired the property, the land adjacent to the railroad was low and marshy and bore no evidence that it had ever been used for highway purposes. Within a short time after the purchase Meredith erected a store and later a repair shop and fenced storage yard, within the forty foot strip. In 1945 and 1946, he built ten stores, all extending into the strip. He testified that he secured a permit from the county for each building and that no suggestion was ever made to him by county officials that the county had the right to use the property for highway purposes.

In 1955 and 1956, after the city had annexed the area and had purchased and paved the railroad right of way as a street, Meredith filled in and paved approximately 350 feet of the strip for parking for his store buildings.

In 1956, William Meredith decided to erect an office building on Clarkson Meredith's property, which he did with the latter's permission. Before building, he made application to the city for a building permit, submitting therewith a plot plan and a street line survey. The city issued him a permit which, "allowed me to put the front of my building approximately thirteen to fourteen feet on this disputed area." The city building inspector visited and inspected the building during the course of construction.

Approximately two years later, William Meredith applied to the city for a permit to erect another office building on the property, which would have extended into the forty foot strip. The city refused the permit because, "there became some question" as to, "the ownership of this forty foot tract of land." Meredith testified that, under duress, he moved the building back so that only "the canopy may hang over" the disputed strip.

The city engineer of Norfolk testified that the permit for the first office building was issued but the permit for the second refused because the county, after annexation, did not furnish the city a plat showing the forty foot strip and, "we did not know about the widening when the first permit was issued. We did on the second." He said that he discovered that the "strip was a road" by examining the deed books and that the strip was then placed on a plat as part of the city street, "because we considered it dedicated" by the 1936 Bell deed to the county. The plat referred to describes the strip as, "40' strip dedicated by R. L. Bell to Norfolk county . . . with reversionary rights." The plat was not prepared until May, 1958.

There is no evidence in the record that the Bell deed of 1936 was the result of a negotiated purchase of the right of way by the county.

It is the position of the complainants that the 1936 deed was merely an offer by Bell to dedicate the right of way to public use; that there was no acceptance of the offered dedication, and that, therefore, full fee simple title to the strip remained vested in Bell and passed, in turn, to the complainants.

The city contends, on the other hand, that the Bell deed was not a dedication but an outright conveyance of the right of way to the county, subject to the possibility of reverter upon abandonment which, it says, has not occurred. The city says further that even if the deed is held to be a dedication, there was acceptance thereof by recordation of the deed. The city concedes that if the transaction was a dedication and if the recordation of the deed did not constitute acceptance, then the strip belongs to the complainants, because neither the county nor the city otherwise accepted the dedication.

We are, therefore, presented these questions for determination:

1. Was the Bell deed a dedication, or an offer of dedication, as it should properly be called?

2. If so, was the recordation of the deed an acceptance of the dedication?

A dedication is the setting aside of land, or of an interest therein, to public use; ". . . a form of transfer by an owner to the public of the fee or a lesser interest in land. . ." *May* v. *Dewey*, 201 Va. 621, 629, 112 S. E. 2d 838.

Dedication may be accomplished by the owner of land by deed or other writing, or by his oral declarations. Or it may be implied from his actions and the long use of his land by the public. *Staunton* v. *The Augusta Corporation*, 169 Va. 424, 432, 433, 193 S. E. 695; *Buntin* v. *Danville*, 93 Va. 200, 204, 24 S. E. 830.

The intention of the owner is the controlling factor. And where the form used is a deed and there is a dispute as to whether the transaction is a dedication, the rule, as with all other deeds, is that the intention of the parties, if it is apparent, must prevail. *Realty Company* v. *Swicegood*, 201 Va. 30, 33, 34, 109 S. E. 2d 108; *Talbott* v. *Richmond & Danville R. R. Co.*, 31 Gratt. (72 Va.) 685, 688, 689.

In the case before us, Mr. and Mrs. Bell, the owners of the land, employed a deed to the county of Norfolk. In determining

whether the transaction was a dedication, it matters not what type of estate would have been created by the deed, upon its acceptance. The crucial question is whether the deed discloses an intention of the grantors to dedicate that estate, of whatever nature, to public use.

It is true that the deed contains the terms "grant and convey" and "general warranty", which are terms usually associated with the absolute conveyance to a specific grantee of an estate in land. But what was granted, conveyed and warranted, and to whom? A right of way over land *for public highway purposes only* was given *to the public*, represented by the grantee in the deed, the county of Norfolk, subject to the owners' retention of the rights of abutters and of the right of reversion in case of abandonment.

The rights granted, and the limitations thereon, are matters which are entirely consistent with dedication and, on the other hand, the use of the words "grant and convey" is not inconsistent with dedication. Whether the Bells used language of conveyance or whether they merely said, "we dedicate the right of way to public use", under these circumstances, the public would not have acquired, upon acceptance, any different rights. *Carter Oil Co.* v. *Myers*, 105 F. 2d 259, 261.

The crucial proof, therefore, of the intention of Mr. and Mrs. Bell to dedicate the right of way is disclosed by the public purpose for which the rights were given and the limitations and reservations placed on those rights in the deed.

In other words, regardless of what label was placed upon the instrument by which they sought to create the public right, when the Bells limited the purpose of the right of way to highway use only and retained the rights of abutters and of reversion in case of abandonment, they were setting aside an interest in their land to public use. Their deed was nothing more, and nothing less, than an ordinary common law dedication. There is not even a suggestion in the record that the county of Norfolk ever considered it otherwise.

And so, we hold the Bell deed to have been an offer of dedication. But a dedication is complete when, and only when, it is accepted by the public. *May* v. *Whitlow*, 201 Va. 533, 539, 111 S. E. 2d 804.

As has been noted, the only alleged act of acceptance upon which the city relies is the recordation of the deed. The city cites the case of *City of San Antonio* v. *San Antonio Academy*, (Tex. Civ. App.) 259 S. W. 995, as its sole authority for this proposition. We do not consider this case to be persuasive. First, the case is not

similar, from a factual standpoint, to the case at bar. Second, the Texas court, in its opinion, states that it was presumed that the grantee-city recorded the deed; that from this it was presumed that there was delivery to, and acceptance by, the city of the deed, and from all of this it was presumed that the dedication contained in the deed was accepted by the city. Thus, presumption was built upon presumption. We cannot recognize a rule founded upon such frail foundations. Furthermore, the holding is contrary to principles already well established in this state.

In Virginia, a dedication must be accepted in some manner recognizing the public claim to that which is alleged to have been dedicated. Something more is required than is true in the case of an ordinary deed between private parties because public, rather than private, rights and obligations are involved.

Acceptance of a dedication may be express or implied. The county of Norfolk could have expressly accepted the Bell deed only by following the requirements of the statute in effect relating to the establishment or alteration of roads (now Code, § 33-142). *May v. Whitlow, supra,* 201 Va., at pp. 539, 540. That procedure would have required formal action on the part of the county board of supervisors, which the mere recording of the deed could not possibly have satisfied.

Nor can we construe the recording of the deed to have been an implied acceptance of the dedication. Acceptance of a dedication of a road will be implied only where the public has treated it as a public road, under circumstances which would render it unjust to permit the landowner to reclaim it. *Kullgren v. Sleeter,* 202 Va. 507, 510, 118 S. E. 2d 514; *Magee v. Omansky,* 187 Va. 422, 429, 46 S. E. 2d 443; *Buntin v. Danville, supra,* 93 Va., at p. 204.

The recording of the deed was not sufficient to show that the public treated the offered right of way as a public road. To the contrary, the evidence shows that it was not so treated.

There was no action taken, either by the county or the city, from the time of the Bell deed in 1936 to the time the suit was tried in 1962, to take possession of the right of way, to improve it in any way, to use it for highway purposes, or formally to include it in a plan for future highway development.

Meanwhile, both the county and the city granted the owners permits to erect buildings projecting into the strip. The public authorities stood by, without complaint, while the owners expended

their funds to improve the property for private use and, for more than twenty years, permitted the strip to be devoted strictly to private purposes.

The evidence before us shows not only that the right of way was never accepted by the public but that, long ago, the offer to dedicate was withdrawn and the right to accept forever lost.

The circumstances of this case are not such as to render it unjust to permit the owners to reclaim their land. They are circumstances which require that they be permitted to reclaim it.

We are of opinion that the trial court properly held the complainants' title to be free of the claim of the city. Accordingly, its decree will be

*Affirmed*