PRESENT:  All the Justices

JAMES A. BROWN, ET AL.

v.  Record No. 971587   OPINION BY JUSTICE BARBARA MILANO KEENAN
                                          April 17, 1998
FRENCH H. MOORE, JR., ET AL.


           FROM THE CIRCUIT COURT OF WASHINGTON COUNTY
                  Charles B. Flannagan, II, Judge


     In this appeal, we consider whether the trial court erred

in ruling that a certain "strip" of real property was not a

public way but was acquired by an adjoining landowner through

adverse possession.

     The disputed property is about 8 feet wide and is located

in the Town of Abingdon.[1]  The property lies along the northern

boundary of residential property owned by French H. Moore, Jr.,

and Mary Ann Garrett Moore (Moore), and along the southern

boundary of a farm owned by James A. and Bliss M. Brown (Brown).[2]

     The disputed property is located to the east of Henry

Street and to the west of Crestview Drive.  Each of these Town

streets leads to the top of a hill and ends in a cul-de-sac.

---

     [1] The exact width of the disputed property is not clear from
the record.  At various times it is described as 7½ feet wide,
8.34 feet wide, and 8½ feet wide.  The exact measurement is not
required for purposes of deciding this appeal.
     [2] Although the property owned by Moore is located within
Town boundaries, only the southern portion of the Brown farm is
located within Town limits.

The disputed property constitutes a portion of the land lying between the two cul-de-sacs.

In March 1989, Brown filed an amended motion for declaratory judgment against Moore, seeking a declaration that the disputed property is a public right of way. In the alternative, Brown asked that if the court determined the disputed property is not publicly owned, the court declare that Brown has a private right of way over the property, and that Moore has failed to establish adverse possession of the property.

The following evidence was presented in a bench trial. Prior to 1872, Edward M. Campbell owned certain real property, including the disputed property. In 1872, Campbell conveyed all but an approximately 18-foot-wide "strip" of his property (18-foot strip) to Washington McClanahan. This 18-foot strip was located along the entire northern border of Campbell's property. The disputed property lies within a portion of the 18-foot strip.

Since 1872, deeds conveying property surrounding the disputed property reference the 18-foot strip, using various terms including, "lane," "public pass way," "right-of-way," and "alley." Also, a Town zoning map, a street plan, a "corporate boundary" plat, and a 1948 annexation order refer to Henry

Street in the general area in which the disputed property is located.

In June 1964, French H. Moore, Jr., James H. Bowden, Jr., and Paul F. Wagner acquired three contiguous tracts of land, including one tract from James and Dorothy Spencer (Spencer tract). The deed conveying the Spencer tract to Moore, Bowden, and Wagner (Spencer deed) provides that the property being conveyed is bordered on the north by an "alley." The referenced "alley" is in the same location as the 18-foot strip. The Spencer deed describes the northern boundary of the Spencer tract as extending 199.5 feet from its southern line.

Moore, Bowden, and Wagner later decided to divide the land they had acquired. To provide access to each lot, they sought to extend Crestview Drive in a westerly direction over a portion of the 18-foot strip. To accomplish this purpose, Moore, Bowden, and Wagner submitted a subdivision plat to the Abingdon Town Council for approval.

Moore requested approval of the subdivision plat at the January 3, 1966 regular meeting of the Abingdon Town Council. The minutes of this meeting reflect that the surveyor who drafted the subdivision plat presented it to the Town Council "with [a] proposal for closing a part of the alley referred to in the request, and advised [the Council] regarding reference to the alley as a lane." The minutes further state that "[s]ince

3

it was not determined if this were an alley and if the Town had any interest therein, [the council referred this issue] to the Town Attorney for advice as to what the Town can do, and for his recommendation on the matter."

Although the request for approval of the subdivision plat was discussed two weeks later at the January 17, 1966 Council session, the minutes of the meeting do not refer to any discussion of the "alley" or "lane." Instead, the minutes reflect that the Town Council informed Moore that a 50-foot right of way was required before the Council would approve the extension of Crestview Drive. To comply with this requirement, Moore agreed to provide the Town with a 17-foot parcel from the northern border of the Spencer tract. Landowners on the northern side of Crestview Drive also provided a 17-foot parcel from the border of their property.

There also was no discussion of the 18-foot strip in February 1966, when the Town Council approved the subdivision plat which provided for the extension of Crestview Drive ending in a cul-de-sac at the northeast corner of the Spencer tract. This cul-de-sac ended just short of the eastern edge of the disputed property. The subdivision plat was recorded in October 1967, and Crestview Drive later was extended in accordance with the plat specifications.

4

Moore, Bowden, and Wagner then executed a partition deed in December 1967, which, among other things, conveyed the Spencer tract to Moore. The partition deed makes no reference to an "alley." However, the metes and bounds description in the partition deed depicts the northern boundary line of the Spencer tract as extending 207.84 feet from the southern border, a distance of 8.34 feet more than the 199.5 feet set forth in the Spencer deed. This additional 8.34-foot portion of land comprises the disputed property.

Shortly after the subdivision plat was approved in 1966, Moore graded his property in preparation for the construction of a house. As a result of the grading, the elevation of the disputed property was lowered 13 feet. Moore also planted trees on the disputed property.

Brown obtained his property by deed dated September 20, 1975. The plat attached to the deed shows a right of way which borders the southern boundary of the property and connects Henry Street to Crestview Drive. The right of way shown on this plat is in the same location as the 18-foot strip and includes the disputed property. In 1986, when Brown attempted to improve the disputed property to create another access to his property, Moore objected and Brown filed this action.

At trial, Brown presented testimony from several witnesses, including Barry L. Proctor, an attorney who concentrated his

5

practice in real estate title examinations.  Proctor testified that the disputed property was dedicated for public use when the Campbell conveyance excluded the 18-foot strip and that, in his opinion, the Town "considered itself to have a public street in this vicinity."  Roy K. Balthis, a certified land surveyor, identified the above-mentioned discrepancies between the Spencer deed and the partition deed and noted the references in various deeds to the 18-foot strip.

Elizabeth S. Jones, an attorney, testified that she found no documents of record indicating that the Town had accepted an offer of dedication of the disputed property.  Jones stated that, in her opinion, there is not a public right of way over the disputed property.  Herman McCormick, Jr., superintendent of public works for the Town from 1963 to 1990, whose responsibilities included supervision of street maintenance, garbage collection, snow removal, and traffic signs, testified that the Town never maintained the portion of land between the cul-de-sac at the end of Henry Street and the cul-de-sac at the end of Crestview Drive.

The trial court held that Brown failed to establish that the disputed property was dedicated as a public right of way. The court also held that, even if Brown once had a private right of way over the disputed property, this right was extinguished by Moore's adverse possession of the property.

On appeal, Brown first argues that the disputed property was dedicated to public use by implication.  In support of this argument, Brown relies on Campbell's 1872 conveyance to McClanahan of all but 18 feet of Campbell's property, and on the references in later deeds to a "lane," a "public pass way," a "right-of-way," and an "alley".

Brown also relies on the separate doctrines of implied acceptance and partial acceptance.  Under the doctrine of implied acceptance, Brown contends that the Town's actions regarding the disputed property constituted an implied acceptance of the purported offer of dedication.  Brown asserts that the Town considered at least a portion of the 18-foot strip to be a public way, since only 34 additional feet were required from the adjoining landowners to create the 50-foot right of way for the extension of Crestview Drive.  Brown also argues that, by referring to the 18-foot strip on a Town map, a "corporate limit" plat, a street plan, and in the 1948 annexation order, the Town accepted the purported offer of dedication.  Under the doctrine of partial acceptance, Brown argues that the Town's acceptance of a portion of the 18-foot strip for the extension of Crestview Drive constituted an acceptance of the entire 18-foot strip, including the disputed property.

Lastly, Brown contends that he obtained a private right of way over the disputed property because a right of way was shown

7

on the plat attached to his deed.  He argues that the evidence does not support the trial court's ruling that Moore acquired the disputed property through adverse possession.

In response, Moore contends that even if the disputed property was dedicated for public use, the Town did not accept the offer of dedication.  Moore also argues that any private right Brown may have had regarding the disputed property has been superceded by Moore's adverse possession of that property. We agree with Moore.

We recently stated the following principles relevant to our disposition of this appeal:

> Dedication, at common law, was a grant to the public, by a landowner, of a limited right of use[] in his land.  No writing or other special form of conveyance was required; unequivocal evidence of an intention to dedicate was sufficient.  Until the public accepted the dedication, it was a mere offer to dedicate.

McNew v. McCoy, 251 Va. 297, 299, 467 S.E.2d 477, 478 (1996) (citing Brown v. Tazwell County Water & Sewerage Auth., 226 Va. 125, 129-30, 306 S.E.2d 889, 891 (1983)); see also Bradford v. Nature Conservancy, 224 Va. 181, 198-99, 294 S.E.2d 866, 875 (1982).  Because a dedication imposes the burden of maintenance and potential tort liability on the public, a dedication is not completed until the public or competent public authority manifests an intent to accept the offer.  Ocean Island Inn, Inc.

v. City of Virginia Beach, 216 Va. 474, 477, 220 S.E.2d 247, 250 (1975).

The acceptance of an offer of dedication by the governing authority may be "formal and express, as by the enactment of a resolution by the appropriate governing body, or by implication arising from an exercise of dominion by the governing authority or from long continued public use[] of requisite character." McNew, 251 Va. at 299-300, 467 S.E.2d at 478. The present record contains no evidence of a formal or express acceptance by the Town of the disputed property. Therefore, we consider whether the Town impliedly accepted the property by exercising dominion over the property or from long continued public use of requisite character.

In determining whether an offer of dedication has been impliedly accepted, courts have given consideration to such governmental actions as the installation of public utility lines in or across a street, the opening and paving of a street, and the repair of a street. See Ocean Island Inn, 216 Va. at 477, 220 S.E.2d at 250-51. These actions constitute affirmative conduct showing an implied acceptance by the governmental body. The record before us does not contain any such evidence of affirmative conduct by the Town regarding the disputed property.

The record also provides no evidence that the Town exercised dominion over the disputed property by performing any

9

maintenance on the property.  In fact, Herman McCormick's testimony provided contrary evidence that the Town did not maintain the land between the two cul-de-sacs from 1963 through 1990, the period McCormick served as the Town's superintendent of public works.

We disagree with Brown's contention that the Town exercised dominion over the disputed property by showing a portion of the 18-foot strip, including the disputed property, on various maps and in the annexation order.  These notations reflect only the physical location of the 18-foot strip and are not evidence of an assumption by the Town of any duty to maintain the property. The contrary conclusion urged by Brown is untenable because it would require the Town to maintain any road or way appearing on any Town document, without regard to whether the Town had engaged in affirmative conduct manifesting an implied acceptance of that particular road or way.

The evidence also was insufficient, as a matter of law, to establish implied acceptance of the disputed property by public use of requisite character.  This principle of implied acceptance is applicable when the public has made such long use of property offered for dedication as to render its reclamation unjust and improper.  See Body v. Skeen, 208 Va. 749, 752, 160 S.E.2d 751, 753-54 (1968); City of Norfolk v. Meredith, 204 Va.

10

485, 491, 132 S.E.2d 431, 436 (1963); Buntin v. Danville, 93 Va. 200, 204-05, 24 S.E. 830, 830-31 (1896).

James Brown testified that when he purchased his farm in 1975, a "roadbed" was visible on the disputed property but the property was "grown up in briars and brush." He also stated that in 1975, the disputed property was passable by means of a four-wheel-drive vehicle. The evidence also showed that some people crossed over the disputed property in traveling between Henry Street and Crestview Drive. However, the evidence does not show the duration of such usage or its frequency over any period of time. Thus, while the record indicates that at some time in the past the disputed property was used as a passageway, the evidence of this use is insufficient to demonstrate "long continued public use[] of requisite character."[3] See McNew, 251 Va. at 299-300, 467 S.E.2d at 478; Body, 208 Va. at 752, 160 S.E.2d at 753-54; Meredith, 204 Va. at 491, 132 S.E.2d at 436; Buntin, 93 Va. at 204-05, 24 S.E. at 830-31.

Under the doctrine of partial acceptance, however, Brown argues that the Town's approval of the subdivision plat for the extension of Crestview Drive manifested its acceptance of at

---

[3] We also find no merit in Brown's contention that, in 1966, Moore "admitted" that the disputed property was part of a public right of way. A statement by a landowner cannot create an implied acceptance by a local governing body, and Brown had the burden of proving such acceptance irrespective of any statement by Moore.

11

least a portion of the 18-foot strip.  Brown contends that, without a portion of that strip, the additional 17 feet from the landowners on the north and south of Crestview Drive would have been insufficient to create a 50-foot right of way for the extension of Crestview Drive.  Brown concedes that the disputed property is not located within the particular portion of the 18-foot strip that the Town accepted.  However, Brown argues that in accepting a portion of the 18-foot strip, the Town has accepted the entire 18-foot strip.

This argument is without merit.  We have limited application of the doctrine of partial acceptance to instances in which "a governing body has accepted part of the streets appearing on a recorded plat and no 'intention to limit the acceptance' is shown."  Ocean Island Inn, 216 Va. at 479, 220 S.E.2d at 252; see Hurd v. Watkins, 238 Va. 643, 651-52, 385 S.E.2d 878, 883 (1989).  "[S]uch partial acceptance constitutes acceptance of all of the streets, provided the part accepted is sufficiently substantial to evince an intent to accept the comprehensive scheme of public use[] reflected in the plat."  Ocean Island Inn, 216 Va. at 479, 220 S.E.2d at 252.  Since the disputed property does not appear on a recorded subdivision plat which depicts a group of streets, the doctrine of partial acceptance is inapplicable.

We disagree with Brown's contention that a different result is required based on the minutes of a January 1994 regular meeting of the Town Council. These minutes contain a statement that the Council construes its act of approving the subdivision plat in 1966 as an "official ruling" closing Henry Street. Brown contends that this statement in the minutes demonstrates that the Town previously accepted the offer of dedication of the 18-foot strip. Such a statement, made 28 years after the described action, is of no probative value on this issue.[4]

We also conclude that the trial court was not plainly wrong in ruling that any claim by Brown to a private right of way over the disputed property has been extinguished by Moore's adverse possession of the disputed property. "To establish title to real property by adverse possession, a claimant must prove actual, hostile, exclusive, visible, and continuous possession, under a claim of right, for the statutory period of 15 years." Hollander v. World Mission Church, 255 Va. 440, 442, ___ S.E.2d ___, ___ (1998) (quoting Calhoun v. Woods, 246 Va. 41, 43, 431 S.E.2d 285, 286-87 (1993)). These elements must be proved by

---

[4] We need not address Brown's argument that the Town did not properly close the public way, and that the Town's attempt to close Henry Street "violates public policy against sanctioning and perpetuating racially segregated residential communities." These issues are moot, in light of our ruling that the Town did not accept the purported offer of dedication.

clear and convincing evidence.  Calhoun at 43, 431 S.E.2d at 287.

Brown contends that Moore failed to meet his burden of proving adverse possession because Moore occupied the disputed property under the mistaken belief that it belonged to him under the terms of the partition deed and subdivision plat.  This "mistake," according to Brown, defeats Moore's claim of adverse possession.

We agree with the principle that one who possesses another's land under a mistake regarding the boundaries of the property and does not intend to claim land beyond the "true" property line, cannot adversely hold the land in question.  See Hollander, 255 Va. at 443, ___ S.E.2d at ___; Christian v. Bulbeck, 120 Va. 74, 102-03, 90 S.E. 661, 670 (1916).  However,

> [w]hether the positive and definite intention to claim as one's own the land up to a particular and definite line on the ground existed is the practical test . . . .  The collateral question whether the possessor would have claimed title, claimed the land as his own had he believed the land involved did not belong to him, but to another, that is, had he not been mistaken as to the true boundary line called for in his chain of title, is not the proximate but an antecedent question, which is irrelevant and serves only to confuse ideas.

Hollander, 255 Va. at 443, ___ S.E.2d at ___ (quoting Christian, 120 Va. at 111, 90 S.E. at 672) (emphasis deleted).

In Hollander, a landowner occupied disputed land under the mistaken belief that it belonged to her under the terms of a

14

deed.  The evidence indicated that the landowner performed maintenance and upkeep on the disputed land for more than 15 years.  We held that the landowner possessed the property with adverse or hostile intent because her claim was not based solely on the deed description, but also on her belief that the property belonged to her.  We noted that this belief was evidenced by the landowner's maintenance and upkeep performed on the disputed land.  Hollander, 255 Va. at 443, ___ S.E.2d at ___.

Similarly, although the Moores may have believed that the disputed property belonged to them under the terms of the partition deed, the testimony of French Moore was clear that he intended to claim the disputed property "against anybody." Moreover, this belief was manifested by Moore's acts of excavating and planting trees on the disputed property.

The evidence also supports the trial court's ruling that Moore met his burden of proving the other elements of adverse possession by clear and convincing evidence.  As stated above, soon after the subdivision plat was approved in 1966 and before his home was completed in 1968, Moore excavated his property and lowered the level of the disputed property by about 13 feet. Brown acknowledged that he could not drive a vehicle on the "actual alley, because it had been disturbed by the grading there and was too steep to drive on."  Further, the evidence is

15

uncontradicted that shortly after the subdivision plat was approved, Moore planted trees on the disputed property.  Thus, the evidence showed that Moore proved actual, hostile, exclusive, visible, and continuous possession, under a claim of right, for at least 15 years.  See Hollander, 255 Va. at 442, ___ S.E.2d at ___; Calhoun, 246 Va. at 43, 431 S.E.2d at 286-87.

For these reasons, we will affirm the trial court's judgment.

Affirmed.