# CIRCUIT COURT OF ORANGE COUNTY

Kenneth Scott Clore et al.

v.

C. V. Cadmus et al.

May 24, 2006

Case No. CH03-000045

BY JUDGE DANIEL R. BOUTON

I set forth below the rulings of the court in connection with the above referenced case.

*Introduction and Procedural History*

This case is before the court based on a dispute between the parties over the status of the title to portions of two streets, Lee Street and Madison Avenue depicted on a plat of the Melrose Subdivision in Orange County. The disputed strips of land lie adjacent to two tracts of real property in the subdivision that are owned by the complainants, Lot 12 and Lot 27.

The complainants assert that the court should quiet the title to the disputed property and find that they own the land based on the doctrine of adverse possession. The respondents maintain that the property is located on two roads that have been accepted as public; thus, any claim of ownership on

the basis of adverse possession is precluded. Alternatively, if the court concludes that the property is not part of two public streets as shown on the subdivision plat, the respondents argue that the complainants have not proven by clear and convincing evidence that they have adversely possessed the property for the requisite fifteen years.

A trial was conducted on March 13, 2006. The court heard ore tenus evidence from a number of witnesses and considered a stipulation reached by the parties concerning the testimony of several other persons. Many exhibits were also introduced into evidence. Following the hearing, the parties were granted leave to submit written arguments in support of their respective positions.

## The Issue of Whether the Roads Are Public

The principles that apply to the resolution of this issue are well established. Two requirements must be satisfied before the court can conclude that the subdivision roads have been dedicated to the public. First, there must be an offer of dedication by the landowner or the developer. Second, there must be an acceptance of the offer by the governing body.

Turning to the first requirement, the recordation of a subdivision plat that depicts public streets and the subsequent sale of the subdivision lots by reference to the plat constitute a common law offer of dedication. *Ocean Island Inn v. Virginia Beach*, 216 Va. 474, 220 S.E.2d 247 (1975); *Payne v. Godwin*, 147 Va. 1019, 133 S.E. 481 (1926). In the present case, the complainants concede that such a plat has been recorded and that many sales have occurred based on the plat since it was first put to record. Therefore, a common law offer of dedication has been proven.

The only disputed issue in the case is whether Orange County or the Town of Gordonsville accepted the dedication; if an acceptance has been proved, the complainants are not able to assert ownership based on adverse possession of the property because the roads are public. If the offer of dedication has not been accepted, the complainants can at least assert that their evidence of adverse possession is sufficient. Should the court agree with them, they can then request that the court grant them the relief prayed for in the bill of complaint.

In Virginia, there are a number of ways to establish that an offer of dedication has been accepted. The methods of proof that can be relied upon for this purpose were extensively discussed in *Brown v. Moore*, 255 Va. 523, 500 S.E.2d 797 (1998). There, the Supreme Court of Virginia noted that acceptance "is not completed until the public or competent public authority

manifests an intent to accept the offer." *Id.*, at pp. 529-30. The court explained that acceptance may be "formal and express, as by the enactment of a resolution by the appropriate governing body, or by implication arising from an exercise of dominion by the governing authority or from long continued public use of requisite character." *Id.*, at page 530. In cases where an implied acceptance is claimed, the *Brown* court further observed that trial courts must give consideration to relevant governmental actions in connection with the roads depicted on the subdivision plat. Thus, based on the rationale of *Brown*, the court must address whether there has been sufficient proof of an express acceptance or an implied acceptance in the present case.

In addition to evaluating whether there has been an express or implied acceptance, the court must take into account another important principle of law that is significant in the context of this case. Specifically, in the case of *Ocean Island Inn, supra*, the Supreme Court of Virginia announced the establishment of the partial acceptance doctrine. There, the court held that:

> where a governing body has accepted part of the streets appearing on a recorded plat and no intention to limit the acceptance is shown, such partial acceptance constitutes acceptance of all of the streets, provided the part accepted is sufficiently substantial to evince an intent to accept the comprehensive scheme of public user reflected in the plat.

*Id.*, at page 479. Thus, the partial acceptance doctrine represents another way in which the acceptance of an offer of dedication can be established under Virginia law.

In light of the above principles, the court will now turn to the evidence contained in the record of this case. To begin with, Orange County has prepared and kept on file tax maps that are consistent with and that confirm the existence of pubic streets in the Melrose Subdivision. The county has also determined that the streets are not to be taxed as private property. The significance of the county's tax treatment of the property was stressed by the Fourth Circuit Court of Appeals in *Laughlin v. Morauer*, 849 F.2d 122 (4th Cir. 1988). There, in analyzing whether a county had accepted an offer of dedication, the court said: "We think it of considerable significance that the park was taken off the tax rolls of Fairfax County with the recording of the plat of Wellington Subdivision and remained off the tax rolls until after Morauer recorded his deed in 1983." 849 F.2d at 124. The court finds that the similar actions of Orange County demonstrate an intent to accept the offer of dedication.

The Town of Gordonsville also engaged in governmental action that demonstrates such an intent. Specifically, the town acknowledged that Cleveland Street, one of the roads that was a part of the original offer of dedication, had been open for public use and used by the public for many years. In addition, a formal document that explicitly establishes and accepts the street was prepared and recorded by the town. (Annadale Exhibit No. 18.) This same document acknowledged the other public streets in the subdivision; it refers to "the dimensions and the names, locations, and widths of the streets and alleys being shown on a map of said subdivision prepared by J. B. Madison, Surveyor on September 25, 1893. . . ."

In 1961, the Town of Gordonsville also vacated a portion of one of the streets depicted on the subdivision plat. (Annadale Exhibits No. 19 and No. 20.) The quitclaim deeds that make reference to this action taken by the town provide further evidence that the offer of dedication pertaining to the subdivision roads was accepted. The town's decision to vacate a portion of one of the streets is evidence that the governing body viewed the roads in the Melrose Subdivision as public. It clearly implies that the governing body had previously accepted the roads as public and then decided in 1961 to vacate a portion of at least one of the roads. In the court's view, a decision by a governing body to vacate property must be premised on the governing body's belief that it has the authority or power to make such a decision. Taking the action needed to carry out the decision by passing a formal resolution and entering into a recorded agreement is further evidence on the issue of intent. Here, the town viewed the roads as public and then vacated and earmarked for private ownership and use a portion of Madison Avenue.

Based on all of the evidence summarized above, the court finds that the respondents have met their burden of proof on the issue of implied acceptance. Once the original subdivision plat was recorded in 1893, the Town of Gordonsville and Orange County took actions that amounted to an implied acceptance of the offer of dedication. When viewed as a whole, the evidence in the record supports the argument of the respondents that an implied acceptance has been proven.

The court also finds that the partial acceptance doctrine articulated in *Ocean Island Inn, supra,* provides a separate basis for the court to rule in favor of the respondents. On this issue, the court finds that the governing body accepted at least part of the streets in the Melrose Subdivision based on what transpired with regard to Cleveland Street. The recorded "Agreement Establishing a Street" (Annadale Exhibit No. 18) explicitly states that Cleveland Street is a public way and that it is being accepted as such by the governing body. Under the doctrine, it would follow that the remaining

subdivision streets were also accepted, unless an intent to limit the acceptance has been shown. Moreover, in evaluating the applicability of the partial acceptance doctrine, the court must find that the part accepted was sufficiently substantial to demonstrate an intent to accept the comprehensive scheme of public use shown on the plat.

Here, all of the evidence cited by the court in support of the implied acceptance of the offer of dedication would also establish that no intent to limit the acceptance has been shown; it would also verify that the part accepted, Cleveland Street, was substantial enough to demonstrate an intent to accept the entire scheme of public use depicted on the plat. There is nothing about the tax treatment of the roads by the county or the actions taken with respect to Madison Avenue by the town that would suggest an intent to limit the acceptance of the Melrose Subdivision streets only to Cleveland Street. In accepting Cleveland Street, the government at the same time referred to the other streets in the subdivision. There is nothing in the document that suggests that Cleveland Street was in any way unique or different from the other roads in the subdivision. It contains no evidence from which it can be inferred that the acceptance of Cleveland Street was intended to be limited. All of the circumstances surrounding the Cleveland Street transaction and the language of the deed of dedication demonstrate that the acceptance of Cleveland Street was substantial and that it reflected an intent to accept the scheme of public use contemplated by the plat.

### The Issue of Adverse Possession

Since the court has ruled that the disputed property is comprised of two roads that were dedicated to the public, it is not necessary to address the claim of adverse possession. Nevertheless, since the facts on this point were fully developed at trial and since the interpretation of these facts remains hotly contested, the court will rule on the issue for the benefit of the litigants. The record of the proceedings will then be complete; if any party wishes to appeal, all contested issues will have been resolved by the trial court.

To begin with, the main problem with any claim of adverse possession is that the complainants never actually possessed the property in question. They have been on the disputed property many times and have engaged in some limited activities on it. Therefore, they have proven that they have consistently used the property. However, their use of portions of the roads is not sufficient to constitute possession as that term has been defined for purposes of adverse possession.

On this point, the court finds persuasive the arguments that are contained in Mr. Albro's brief. As he perceptively notes, the uses and activities relied on by the complainant here are quite limited when compared to the facts of a number of cases that have been decided by the Supreme Court of Virginia. While each case of adverse possession must be evaluated based on its own individual circumstances, the court must take into account facts that have been noted as important or persuasive in other cases where claims have been successfully asserted. On this point, actions such as fencing, posting, the construction of permanent improvements, cutting timber, drawing water, and blocking the access of others have previously been cited as evidence in support of claims for adverse possession. See *Quatannens v. Tyrrell*, 268 Va. 360, 601 S.E.2d 616 (2004); *Walton v. Rosson*, 216 Va. 732, 222 S.E.2d 553 (1976). In the present case, there is no evidence of any acts of this type.

In this context, it should also be stressed that this is not a claim for a prescriptive easement in which the adverse nature of the continuous use of a portion of the property for ingress and egress is in dispute. Rather, the complainants here assert that they are entitled to ownership of and title to both portions of the subdivision roads based on their adverse possession of this property. Yet, although there was evidence of use on some parts of the disputed property, much of the area in question consists of open land. Some of it has never been used for any purpose. Many of the photographs in the record illustrate this point. There is little about observing the property that would provide notice of or point to ownership, possession, or occupancy of the land by any party. Mowing the grass or gardening when the weather allows for such activities is not sufficient. Based on all of the evidence in the record, the court finds that possession has not been proved by clear and convincing evidence.

Second, even if any use or activity engaged in by them amounted to possession of the property, such possession was not hostile or adverse. On this point, the testimony of the complainants contributes to the defeat of their claim. To her credit, Ms. Clore was both honest and candid in admitting that she eventually learned that the disputed area was not within the boundaries of the property that she had acquired. She knew that she was not the owner of the property. She also stated that she and her husband harbored no hostile or adverse intent in connection with their activities; they actually made inquiries about building on the property and declined to do so when they were told that a building permit could not be issued. At that point, they refrained from any further acts of possession and from any additional efforts to assert their control and dominion over the property. They continued to use some of the property on a limited basis. However, their objective was to purchase the property from

whomever was the lawful owner, not to possess it with hostile or adverse intent. Thus, they have not proved by clear and convincing evidence that any possession was hostile or adverse.

An additional reason why the claim for adverse possession must fail is due to a lack of proof that any such possession has occurred for the necessary fifteen years. On this point, the respondents correctly point out that in order to prevail, the complainants must "tack on" at least a portion of the time that the property was used by the Browns in order to reach the necessary fifteen years. However, a party making a claim where tacking is involved must prove when the prescriptive period began to run. *McNeil v. Kingrey*, 237 Va. 400, 377 S.E.2d 430 (1989); *Clatterbuck v. Clore*, 130 Va. 113, 107 S.E. 669 (1921). What this means is that the complainants must introduce evidence that allows the court to identify with reasonable certainty the date or period of time when all of the elements of proof for adverse possession were first established. For example, the doctrine of tacking does not permit a litigant to add periods of time that include the actions of a predecessor in title when such actions were by permission or agreement. It does not allow time to be added simply because the activities of a prior owner are similar to the uses that are claimed by a subsequent owner. In order to tack, a party must first establish that any prior period of possession that is to be included was adverse, as defined by Virginia law. In other words, all blocks of time that are to be included to reach the legally required fifteen years must be blocks of time when the property was being adversely possessed.

In the present case, there is no evidence that the Browns adversely possessed the property in question. The actual evidence regarding the Browns is quite sparse. A careful review of Ms. Clore's testimony and the stipulated testimony of the other witnesses reveals that any knowledge of the actions taken by the Browns is not extensive. There was testimony that, in the disputed portions of the property, the Browns were observed clearing some brush, mowing the grass, engaging in some gardening, and working in a grape arbor. Beyond this general description, however, no specific evidence was provided regarding how often these activities occurred, when they took place, and whether they were observed by others. Therefore, while this testimony established that the Browns engaged in certain activities on the property and that some of these activities were similar to the uses of the property claimed by the Clores, the evidence falls short of proving that the Browns adversely possessed the property. As a result, tacking is not available here to support the argument of the complainants.

## *Conclusion*

For the reasons set forth above, the court finds that a common law offer of dedication and an implied acceptance of the offer have been proven. The court also finds that the partial acceptance doctrine supports the position of the respondents regarding the roads. The court further finds that there is not sufficient evidence to prove by clear and convincing evidence the claim of adverse possession. Therefore, the bill of complaint will be dismissed.