## CIRCUIT COURT OF WESTMORELAND COUNTY

Doe et al.

v.

Town of Colonial Beach et al.

September 13, 1995

BY JUDGE JOSEPH E. SPRUILL, JR.

The complainants here have filed this action against the Town of Colonial Beach, its mayor and council, asking, among other things, that the Court find that certain properties within the Town are trust properties as a result of a deed of indenture executed and recorded in 1882.

The Town, among its responsive pleadings, has filed a Motion for Declaratory Judgment asking the Court to declare that the Town of Colonial Beach owns, in fee simple, all the property which was the subject of the deed of indenture, without restriction or encumbrance.

Following a number of preliminary sessions, the matter came on to be heard July 12. The Court has since received post-trial memoranda from counsel and will now address the issue raised by the Motion for Declaratory Judgment.

The instrument giving rise to this litigation is a deed of indenture dated October 31, 1882, wherein Henry J. Kintz, Trustee, conveyed to seven named trustees the fee simple title to the "streets, highways and parks and . . . the riverfront" lying within a subdivision then known as White Point Farm "to have and to hold the same in trust for the benefit and enjoyment of the owners of the lots in said subdivision forever under such reasonable rules and regulations as said trustees or a majority of them may from time to time ordain, promulgate and establish . . . ."

Assuming, without deciding, that the Kintz deed of 1882 conveyed this property in trust, as the complainants maintain, the question is whether the

trust has survived to the present time. In deciding this issue, we look to what has happened since this deed was put to record.

On February 25, 1892, approximately ten years after the Kintz deed, the Town of Colonial Beach was incorporated by act of the General Assembly. Thereafter, on July 16, 1894, the lot owners petitioned the court requesting the trustees named in the Kintz deed to convey "to the Town of Colonial Beach as incorporated . . . *as was contemplated at the time of the creation of the said trust*, all right, title and interest to and in the streets, avenues, parks, waterfronts, wharf, etc. . . . ." (Emphasis added.) This proceeding is referred to herein as the Walcott suit.

The order of publication giving notice of the suit published in the Alexandria *Gazette* in September, 1894, states the object of the suit, which was: "to substitute the council of the Town of Colonial Beach in the place and stead of the surviving trustees" named in the Kintz deed. We note here that the Kintz deed in 1882 did not convey to the trustees all of the public areas now in dispute. Rather, it conveyed only those areas located within what was then known as White Point Farm, which consisted of that area of the Town lying to the south of First Street.

On September 8, 1897, a decree was entered in this Court, wherein the mayor and town council of Colonial Beach were substituted for the original trustees. This decree noted that the original purpose and intent was to make Colonial Beach "a popular summer resort" and recited that the Town by then had become incorporated and included within its borders not only the White Point Farm area but, in addition, the area to the north up to Bluff Point Farm.

The complainants in this action now argue that lot owners in the additional area encompassed by the court decree thereby became beneficiaries of the trust created in the Kintz deed.

The papers in the Walcott suit resulting in the 1897 decree confirm the intent of all involved that the rights to the property would be conveyed to the Town upon incorporation. In the petition, the lot owners in 1894 were explicit in stating their request and intent to convey the property to the Town.

The Walcott suit contains a narrative report signed by the trustees under the deed of indenture which states:

> It only remains for the lot owners to perfect an organization by the creation of a board of management, with power to establish uniform building lines; to provide sanitary regulations; to take into consideration the most feasible method for the distribution

of water; to look after the grading of the streets; and generally to consider what will best conduce to the health, comfort and good order of the Beach, and to provide appropriate rules and regulations in that behalf.

This provisional board will be necessary until application can be made to the legislature of Virginia for the grant of proper corporate authority in the premises.

*The committee will execute all deeds and instruments necessary to transfer such rights and powers as are now vested in them to the new body.* [Emphasis added.]

There is little, if any, dispute as to what has transpired regarding the subject property over the past century.

There is no evidence to suggest that any member of the town council ever consented to serve as trustee or that any ever gave bond or qualified as trustee. If this were a trust, there would have been imposed upon the trustees duties for the management and control of the property. There is no evidence of such. No instrument relating to this property has been signed by a trustee since the decree of 1897. Indeed, nothing has been offered to suggest that the subject property has been treated as if it were "trust property" at any time since the 1897 decree. Trustees are held to strict accountability, yet there is no evidence that there has ever been an accounting.

Since 1897, this property has been treated in virtually every respect as municipal property. The streets, parks, and shoreline of Colonial Beach, which is the property in contention, have been exempted from taxation since the incorporation of the Town. The Town has developed and maintained the streets and other public areas with municipal, state, and federal funds throughout this period. Although as a general rule, trustees have a duty to preserve trust property intact, in fact, to date, approximately 99 streets in the Town have been transferred by the Town to the state highway system. The state and federal governments continue to expend considerable sums maintaining the streets and preserving the shorelines within the Town. On occasion, over the years, the subject property has been leased, exchanged, or sold, always and without exception as though it was the property of the Town.

One of the elements of a public or charitable trust is that it is certain as to the class of persons, though indefinite as to the individuals, to be benefitted. The Kintz deed referred to "lot owners" in what is now only a part

of the Town of Colonial Beach, yet the claimants do not argue that it is only this group that are beneficiaries.

The Town argues that even if the Kintz deed of 1882 established a trust, the subject property has since been dedicated to public use so that the Town owns the fee simple title to the property. The evidence compels the conclusion that the property has in fact been dedicated to public use.

A dedication is the setting aside of land to public use and may be accomplished by oral declaration or deed or may be implied from actions and long use by the public. *City of Norfolk v. Meredith*, 204 Va. 485 (1963). When the intention of the owner to make the dedication has been unequivocally manifested and there has been acceptance by competent authority, or such long use by the public as to render its reclamation unjust and improper, the dedication is complete. *Greenco Corp. v. City of Virginia Beach*, 214 Va. 201 (1973). The original petition of the lot owners and the narrative statements submitted by the trustees in the Walcott litigation clearly establish an intent on the part of the owners and trustees to transfer this property to the Town of Colonial Beach. The Court acted upon those requests.

The complainants argue that notwithstanding the fact that for nearly a century this property has been developed, maintained, and managed by the town and financed through public funds from local, state, and federal sources, they are the equitable and beneficial owners of the property to the exclusion of the public generally. Such a position is manifestly untenable.

Although the Complainants seem mainly concerned about the park and beach areas, they ask that the Court find that the Town does not in fact own *any* of the public areas within the Town. This includes the streets, sidewalks, drainage easements, sewerage easements, and easement areas for water, telephone, electricity, and other utilities. Such a finding would seem to be cataclysmic for the Town.

The Town further argues that any trust created by the deed of indenture has been terminated through a merger of estates.

The essence of a trust is the division of legal and equitable title; the trustee is vested with legal title, and the beneficiary maintains equitable title. When the legal title to trust property and the entire beneficial interest become united in one person or entity, the trust terminates. In the Walcott suit, the lot owners petitioned the trustees to convey their interests in the property to the Town. Upon the entry of the 1897 decree, the Town possessed both the legal interest to the property as trustee and the equitable title as beneficiary. Therefore, any trust created by the deed of indenture

was terminated as of the entry of the decree, and the Town has since held fee simple title to the property under the doctrine of merger.

Further, as a general rule, trusts are terminated by the accomplishment of the purposes for which they were created. It is clear from the lot owners' petition in 1894 that the trustees were to hold legal title until the Town became a corporate entity. Thereafter, as stated by the trustees themselves, they would "execute all deeds and instruments necessary to transfer such rights . . . . to the new body."

The complainants have not been able to show by a preponderance of the evidence that any trust established by the Kintz deed has survived. The evidence does establish that the property in question is municipal property, title being transferred to the Town by dedication, both express and by implication, and by merger of estates.

Having reached these conclusions, we are nonetheless troubled by the obvious concern expressed by some of the complainants over what they perceive as threats to their homes and properties. The following comments are *obiter dictum* and are offered solely in an attempt to place these concerns in perspective, to the extent it is possible to do so.

The source of the complainants' claim of a trust is, of course, the Kintz deed, which assigns the property to the trustees for the "joint benefit of the lot owners in said subdivision forever, under such reasonable rules and regulations as said trustees or a majority of them may from time to time ordain, promulgate and establish." This sentence gives all the guidance there is as to the administration of the purported trust. The trustees are not prohibited from selling or otherwise alienating "trust property" so long as they deem it to be for the joint benefit of the lot owners. Nothing mandates that the property remain as is in perpetuity. The property would be held for the joint benefit of all, and the Trustees, or a majority of them, would determine what their joint benefit would be.

On the other hand, property owned by a municipal government and appropriated for public use is also impressed with a trust to be used for the benefit of the municipality as a whole. Thus, property owned by the Town is held and managed for the benefit of the citizens of the Town as determined by its council. Town property cannot be disposed of except by valid authority, and courts have the equitable power and the jurisdiction to prevent municipal corporations from abusing or exceeding their authority.

Thus, the question arises: how much difference does it actually make if decisions regarding this property were made by trustees, as opposed to council members. In either case, the decisions will be made by the same

people. In either case, the majority would rule. In either case, decisions must be based on what is for the benefit of the Town as a whole. And in either case, the decisions are based upon the good faith exercise of the discretionary powers conferred.

This is not the first time this issue has been addressed by the Court. Although the same issue was presented and decided in 1993, this case has not been decided upon the doctrines of res judicata or estoppel. We have had here a full airing of views. Counsel for both sides seem to have left no stone unturned in their search for evidence in support of their positions.

This ruling on the declaratory judgment action renders moot the other issues raised in the Bill of Complaint.