# City of West End *v.* Eaves.

*Bill to Enjoin Obstruction of Highway.*

(Decided July 2, 1907.   44 South. 588.)

1. *Dedication; Highways; Establishment.*—A common law dedication of land to the public for a highway may rest in parol, the rights of the public attaching from the date of settlement, and not being dependent on the use of the highway for any length of time.

2. *Same; Burden of Proof.*—A party alleging a dedication of land to public use has the burden of proving it.

3. *Same; Contract of Dedication; Evidence.*—The evidence in this case examined and held to show that the president of the corporation owning certain land made a parol contract on its behalf with a certain person for the dedication of a portion thereof for a street,

which said person opened and graded at his own expense, and that the corporation by acquiescing therein ratified the act of the president in making such contract.

4. *Same; Revocation.*—A dedication of land to the public use for a street, once made and accepted, is not revoked by a subsequent survey and plat of the property by the dedicator, so long as the public use thereof is maintained.

APPEAL from Birmingham City Court.

Heard before Hon. C. C. NESMITH.

Bill by the city of West End against Jesse Eaves to enjoin the obstruction of an alleged public highway by him. From a judgment for respondent, complainant appeals. Reversed and rendered.

POWELL & BLACKBURN, for appellant.—the act done by Powell and the public indicated an acceptance of the dedication.—14 Cyc. 1150; *Sharpe v. Marks,* 137 Ala. 147.

A. C. & H. R. HOWZE, for appellee.—No contract is shown by the West End Land Company or ratification by it of the acts of its president.—*Ala. Nat. Bank v. O'Neal,* 128 Ala. 192; 2 Cook on Corp. §§ 712-719. Under the facts no dedication was shown.—*Steele v. Sullivan,* 70 Ala. 589; 9 A. & E. Ency. of Law, p. 37.

DENSON, J.—This bill is filed for the purpose of enjoining respondent from obstructing a public street, known as "Powell Street," within the corporate limits of the complainant. The vital question in the case is whether or not the West End Land & Improvement Company, a corporation, in 1887, made an express common-law dedication to the public use of the land covered by the alleged street, as it runs from the Alabama Great Southern Railroad track to the Tuscaloosa road. The bill alleges: That within the corporate limits of the complainant is a public highway known as "Powell

Street." That said street was laid off and dedicated to the public in 1887. That at the time of said dedication the complainant was not organized as a municipal corporation, but that said dedication was made in the following manner: C. B. Powell owned all the land on the south side of the Alabama Great Southern Railroad track, where it now runs through the corporate limits of complainant, for the full length of said street on the south side, and the West End Land & Improvement Company owned the land on the north side of said railroad track where said street was laid off; that Powell dedicated said street on the south side in statutory form, and made a contract with the West End Land & Improvement Company whereby it agreed to open, and did open, said street through its said lands to the Tuscaloosa road—said street as opened being dedicated and laid off by the extensions of the lines of said Powell street across said railroad and through the property of the West End Land & Improvement Company; that said street was dedicated by said company through its lands 80 feet wide. It is further shown by the bill that the consideration for the dedication by the company was that the said Powell agreed to grade and open said street at his own expense through his own lands and through the lands of the company; that at the time the company's lands through which said street was laid off were low, wet, marshy, and impassible; and that at one end of said street was an embankment, which had to be removed in order to make the street the same grade as the Tuscaloosa road, and a bridge was built across a ditch which was necessarily cut across the street to properly drain it. It is shown by the bill that Powell, in compliance with the alleged agreement, graded the street, built the bridge, removed the embankment, and filled in the marsh with broken stone. It is then averred

that since said street was constructed in 1887 the pub-
lic have continuously used it as it lies; that it was main-
tained, and the bridge and ditch kept in repair, by the
people in the vicinity, until the complainant was in 1900
created by an act of the Legislature, since which time
it has been maintained, and the bridge and ditch kept in
repair, by the complainant, as one of the streets of the
complainant. The answer of the respondent denies that
the contract of dedication was ever made by the West
End Land & Improvement Company and denies all the
allegations of the bill in respect to the dedication. The
chancellor found against the complainant on the evi-
dence and dismissed the bill.

The contract by which it is claimed the dedication
was made, it is insisted, was made by Powell with the
West End Land & Improvement Company, acting and
contracting through R. H. Pearson as its president. The
only direct testimony for the complainant in respect to
the making of the contract of dedication is that of C. B.
Powell. It is to the effect that the West End Land &
Improvement Company owned a large tract of land on
the north side of the railroad, and he owned 100 acres
on the south side. Arthur Owen Wilson was employed
by both of the parties to lay off their respective lands
into town lots; Powell's employment of him being first
in point of time. At the time of the employment there
was considerable activity in real estate in that district,
and nearly all the civil engineers had more than they
could do. It was agreed between Pearson and witness
that the company's land should be first laid off by Wil-
son, and in consideration of that agreement, the witness
testified, "we were to have one street through my prop-
erty to extend across the Alabama Great Southern Rail-
road to a connection with the Tuscaloosa road, which

22 R

runs through the company's property a few hundred feet over the Alabama Great Southern Railroad in the same direction. * * * Wilson, the engineer, was to make a survey, and run the lines of the streets on the same line as in my survey." The evidence shows that Wilson did make the survey, and projected the lines of Powell street through the lands of the company; and the undisputed proof shows that Powell constructed the street through his own lands and those of the company, as surveyed, at his own expense. Powell further testified that the street was used and kept up by the public. But he testified that Wilson did not lay off into the lots the land of the company through which Powell street runs; that a number of years after the company made a further survey, and laid off the strip into lots and that in so doing they employed the services of one Alber as engineer; that the lot claimed by the respondent, where Powell street runs, was laid off, but that no one took visible possession of the lot, and the public continued to use the street until respondent began to build his fence, just prior to the filing of the bill. R. H. Pearson, for the respondent, testified, that he was president of the West End Land & Improvement Company, from its organization in 1886 to the time of giving his testimony; that he had no recollection of having made any agreement with C. B. Powell that he might open a street 80 feet wide, to be known as an extension of Powell street, from the land owned by Powell at the time, across the lands of the West End Land & Improvement Company, or any portion of them, to the Tuscaloosa road; that if any such agreement had been made he supposed he would have remembered it, and that his best recollection was that he never made any such agreement; that he was not authorized by the board of directors of the company to make any such agreement, and that there had never

been any action, by him or said board of directors, in any way ratifying the opening of the street by Mr. Powell through the lands, or dedicating the same as a public street or for the use of the public generally; that the lot involved in this controversy is in block 85 of the Alber map, and had been sold by the company; that he did not know that a street was graded over the land in 1886 or 1887; and on the cross-examination he testified that no agreement was ever made about the street.

An express common-law dedication of land to the public use as a highway may rest in parol, and the rights of the public are not dependent upon the use of the highway for any length of time, but arise and attach to the highway upon its acceptance by the public.—Elliott on Roads and Streets, § 121; *Stewart v. Conley*, 122 Ala. 179, 27 South. 303. But the burden of proving a dedication of lands to public use rests on the party who alleges it, and when it rests in parol the law requires that the evidence to establish it shall be clear, unequivocal, and satisfactory.—*Forney v. Calhoun County*, 84 Ala. 220, 4 South. 153; 9 Am. & Eng. Ency. Law, 52 (note 2). While this is a salutary rule, and exacts a high degree of proof, we are of the opinion that the preponderance of the evidence favors the insistence of the complainant that the contract of dedication was made. Powell's testimony that an agreement was made is positive in its nature. He testified without qualification that Pearson, acting for the company as its president, made the agreement; while Mr. Pearson's evidence is of a negative character. It clearly appears that he simply bases his evidence that the contract was not made on his lack of recollection in respect to the matter. There is an old rule of evidence which requires that the evidence, where there is conflict, must be so reconciled, if it can be reasonably done, as to make all the witnesses speak

the truth.  We cannot find that the contract was not made, without attributing falsehood to Powell; but we may find that it was made, and not attribute falsehood to either Powell or Pearson, upon the very reasonable theory that the transaction occurred as testified to by Powell, but that the facts had faded from Mr. Pearson's memory.  He had had many transactions for the company; and the one in question is alleged to have occurred in 1887, quite a number of years before Mr. Pearson was called to testify about it.  Furthermore, it seems to us that the circumstances, about which there is no dispute, bear out and fortify Mr. Powell's testimony.  Both Powell and the company were laying off their property into town lots.  It was natural that streets should have been laid out and dedicated.  Powell went upon the company's property and constructed the street.  Sidewalks were built upon it, ditches were cut to drain it, bridges were built over ditches, an embankment of earth was moved, and a marsh filled in with stone, at a personal expense to Mr. Powell of $156.  If Powell went on the company's property without permission and constructed the street, he was guilty of a trespass, which would have subjected him to be mulcted in damages at the suit of the company.  Yet no suit was brought. True, Mr. Pearson testifies that he did not know the street was laid out; but we think the proof beyond question shows it was laid out.  Again, it is a little unreasonable to say that Powell would expend so large a sum of money in constructing the street through the company's land, without some agreement authorizing it, or without permission from the company.  According to Powell and Pearson both the intention of speaking truthfully, and not attributing falsehood to either, we think, and hold, that the preponderance of the evidence establishes the insistence of the complainant that the agreement of

dedication was made between Powell and Pearson as the president of the company.

This presents for consideration the insistence of the respondent that, conceding that Pearson made the agreement contended for, yet his agreement was not binding on the corporation. As we have seen, there is ample evidence tending to show that the street, as constructed by Powell, was used by the public, and that the people in the vicinity, before the complainant was organized as a municipal corporation, kept the street, and especially the bridges thereon, in repair; and the evidence without conflict shows that Mr. Pearson was president of, and a principal stockholder in, the company, when the agreement to dedicate was made, and acted for the company. Under these circumstances, the authority of Pearson, as president of the corporation, may be inferred from silence and acquiescence in the public use.—*Union Company v. Peckham,* 16 R. I. 64, 12 Atl. 130. It is well settled that a dedication of land to public use, once made by the owner and accepted by the public, cannot be revoked so long as public use is maintained; so that the subsequent survey and plat by the company of the lot claimed to be a part of Powell street cannot revoke or annul the dedication to the public use.—9 Am. & Eng. Ency. Law, 30 (note 3); *Barclay v. Howell,* 6 Pet. (U. S.) 498, 8 L. Ed. 477; *Brown v. Manning,* 6 Ohio, 298, 27 Am. Dec. 255; *Union Company v. Peckham,* 16 R. I. 64, 12 Atl. 130.

We are of the opinion that the decree of the chancellor is erroneous. It must therefore be reversed, and a decree will be here rendered granting the relief prayed.

Reversed and rendered.

Tyson, C. J., and Haralson and Simpson, JJ., concur.