# Richmond

## CITY OF STAUNTON V. THE AUGUSTA CORPORATION.

November 11, 1937.

Present, All the Justices.

The opinion states the case.

*Peyton Cochran,* for the appellant.

*J. M. Perry* and *J. Wesley Taylor,* for the appellee.

EGGLESTON, J., delivered the opinion of the court.

In January, 1937, The Augusta Corporation acquired two lots of land, fronting together forty-seven feet and two inches on the western side of Augusta street, between Beverley and Frederick streets, in the business district of the city of Staunton. On the lots were two old buildings, the fronts of which were set back about three feet from the line of the Bruce building immediately to the south and the Zuber building to the north. In fact, all of the buildings, extending together about one hundred and sixty feet along the west side of the street between the Bruce and the Zuber buildings, were set back the same distance. The remaining buildings in the block were set on the line of the Bruce and Zuber buildings. This situation had obtained for about fifty years. With the exception of a concrete step located on or in front of the southern portion of the property of The Augusta Corporation, this entire three-foot strip extending along the front of these buildings had been for many years unoccupied by any structure and had been paved uniformly with the sidewalk.

Desiring to improve its property The Augusta Corporation applied to the city authorities for a permit to demolish the old structures and to erect a new building, which was to cover the three-foot strip and to extend out to the line of the Bruce and Zuber buildings. The permit was refused on the ground that the strip was a part of the sidewalk and not the property of the applicant.

Thereupon The Augusta Corporation filed its bill of complaint against the city asking that its title to the said strip of land be quieted; that the proper authorities of the city be required to issue a permit for the erection of the building; and that the city be restrained from any interference with the complainant in the use of this strip of ground. A preliminary injunction was granted, depositions were then taken, and upon consideration thereof the court entered a final decree granting the prayer of the bill. Hence this appeal.

The city's first contention is that the whole three-foot strip in dispute belongs to it; that the true property line on the western side of Augusta street is that fixed by the front line of the old buildings (including those formerly on appellee's property) along the setback strip; that the concrete step along the front of the southern portion of appellee's property encroaches upon the sidewalk; and that appellee should not be permitted to build on any portion of this strip.

The testimony of the city's witness, C. G. Irvine, a registered surveyor, is the principal basis for this claim. This witness testified that neither the eastern nor the western line of Augusta street, in this block, can be definitely established due to the lack of monuments; that a report submitted to the city council in 1872 by Major Hotchkiss, an eminent engineer, fixed the width of Augusta street at forty-two feet; and that this width can be obtained only by including the strip as a part of the sidewalk.

This contention of the city suggests these pertinent inquiries: If Mr. Irvine is right and the lines of Augusta street can not be definitely ascertained, how does this support the city's claim to the property in question? If the city can not establish the lines of its street, how can it say that the appellee's property encroaches thereon? Why say the property on the western rather than that on the eastern side encroaches on the street?

Again, the city says the buildings erected on the setback strip "were probably erected on what the then owners of these properties considered the correct street line." Why is it not just as reasonable to assume that the line established by the front of the Bruce building, the Zuber building, and the other buildings in the block is the correct street line? Certainly the mere location of the buildings do not aid us in fixing the correct street line, because we have one set of buildings establishing the line claimed by the city, and the other set establishing another line three feet east thereof claimed by the appellee corporation.

But aside from these considerations there is affirmative proof in the city's own records which, we think, refutes its

claim. In 1873, Colonel Lilley, an engineer who had been employed by the council to ascertain and fix the lines of Augusta street, reported its correct width in this block to be forty-one feet. He also reported that the Brooks' house, then located on the eastern side of Augusta street opposite the property now owned by The Augusta Corporation, encroached upon the street one foot and ten inches, and that the Bruce house (adjoining appellee's property on the south) was set back six inches from the street line. And be it remembered that the buildings on appellee's land were set back three feet further than the Bruce building.

The city records show that the Lilley report was received on July 15, 1873, and referred to the committee on streets for examination and a report. On August 5, 1873, by resolution, the council adopted "the report of the committee on streets in reference to the line of Augusta street." We think it is fair to assume that this was intended to be and was, in fact, an adoption of Colonel Lilley's report.

The witness, Irvine, testified that the present street, from the front of appellee's property on the west to the opposite building on the east, is thirty-nine feet eight and one-half inches wide. If we add to this the encroachment of one foot and ten inches by the Brooks' house on the east, and the setback of six inches in the Bruce building on the west, we have a total width of forty-two feet and one-half inch, more than that called for by either the Hotchkiss or the Lilley reports.

We, of course, do not mean to say that any of the property on the eastern side of Augusta street does, in fact, encroach upon the sidewalk. That question is not before us. At any rate we see that Mr. Irvine's testimony and the city's own records show that the width claimed by the city may be accounted for without necessarily taking the strip of property claimed by the appellee.

Unfortunately the maps attached to both the Hotchkiss and the Lilley reports have been lost. However, the record discloses that in 1906 the city council approved and adopted an official map of the city made by Carter Harrison, civil

engineer. This map shows the western line of Augusta street, between Beverley and Frederick streets, to be straight with no setoff and no encroachment. If the city's contention be sound, the Bruce building and the bank building to the south of appellee's property, as well as the Zuber and Kivlighan buildings to the north thereof, all encroach upon the sidewalk as much as three feet. And yet the official map does not disclose this, nor is there the slightest suggestion anywhere in the record that the city has ever made the contention that any of these buildings encroach upon its street.

■ Our conclusion is that the city's evidence fails to show that the three-foot strip in question is a part of Augusta street, or that the concrete step located on said strip encroaches upon the sidewalk.

The city next contends that even if the predecessors in title of The Augusta Corporation originally owned this strip of land, that portion not covered by the concrete step has long since become a part of the sidewalk, and has been acquired by the city (1) by virtue of the implied dedication by the former owners of the strip to the public use, and the city's acceptance thereof by the exercise of jurisdiction and dominion over it; (2) by prescription or user by the city for a period much greater than twenty years; and (3) by virtue of the provisions of section 31 of the city charter hereinafter referred to.

On its part appellee contends that the old buildings were originally set back from the street line for the convenience and benefit of the occupants of the premises in displaying their merchandise thereon; that there never has been any conduct on the part of any of its predecessors in title, in connection with this strip of land, which would signify a dedication thereof to the public; and that such use as the public made of the strip was with the permission of and was not adverse to the former owners.

■ It is, of course, well settled that a dedication of land for the use and benefit of the public need not be made

by deed or other writing, but may be effectually and validly made by acts or verbal declarations. It may be express or implied. It may be implied from long use by the public of the land claimed to be dedicated. *Buntin* v. *City of Danville,* 93 Va. 200, 204, 24 S. E. 830; *West Point* v. *Bland,* 106 Va. 792, 794, 56 S. E. 802; *Bellenot* v. *City of Richmond,* 108 Va. 314, 316, 61 S. E. 785.

██ But "To constitute a dedication there must be an intention to appropriate the land for the use and benefit of the public. The intention, the *animus dedicandi,* is the vital principle of the doctrine of dedication. The acts and declarations of the landowner indicating such intention must be unmistakable in their purpose, and decisive in their character, to have that effect." *Harris* v. *Commonwealth,* 20 Gratt. (61 Va.) 833, 837. See also, *City of Norfolk* v. *Southern Railway Co.,* 117 Va. 101, 108, 109, 83 S. E. 1085; *Keppler* v. *City of Richmond,* 124 Va. 592, 613, 98 S. E. 747.

█ Since we know that individual owners of property are not apt to transfer it to the community or subject it to public servitude without compensation, the burden of proof to establish dedication is upon the party alleging it. 8 R. C. L., p. 903, sec. 27; 18 C. J., p. 93, sec. 101; *MacCorkle* v. *City of Charleston,* 105 W. Va. 395, 142 S. E. 841, 842, 58 A. L. R. 231; *City of West End* v. *Eaves,* 152 Ala. 334, 44 So. 588, 590; *Littlefield* v. *Hubbard,* 124 Me. 299, 128 A. 285, 287, 38 A. L. R. 1306.

█ "User, in order to constitute proof of dedication, must have been by the public, and adverse to and exclusive of the use and enjoyment of the property by the proprietors, and not a mere use by the public under and in connection with its use by the owners in any manner desired by them; otherwise it is insufficient, no matter how far beyond the period of limitations it is extended." 8 R. C. L., p. 904, sec. 29. See also, 4 McQuillin, Mun. Corp. (2d Ed.), secs. 1688, 1689.

These general principles of law are not contested. It is the application of them to the facts here existing which leads to this controversy.

The city showed that the buildings had been set back of this strip of land for over fifty years; that the strip had been paved with the same material as the sidewalk for a like period; and that it was open to and used by the public during that time.

Whether the property owner or the city bore the original cost of paving the strip does not appear from the evidence. The city proved that the brick pavement on the entire sidewalk, including the strip in question, was replaced with concrete pavement installed by the city in 1907. Again, the record does not show who bore the cost of paving the strip in question.

It also appears from the evidence that some defect in the pavement on the strip was repaired by the city at the direction of the chief of police within recent years, but whether this was done at the expense of the city or the owner of the property is not disclosed.

The evidence on behalf of the appellee is that the buildings were originally set back from the street line in order that the occupants might have space in front of the stores in which to display their merchandise. When paved, this area was, of course, used as a means of going from the sidewalk to the store entrances.

Certainly the overwhelming evidence is that the southern portion of the strip on which is located the concrete step, and which is about one-fourth of the property in controversy, was used for purposes of the former owners. This much the city admits. Therefore, it makes no claim by dedication to that portion of the property. But, we think, a fair reading of the evidence leads to the conclusion that the city has failed to carry the burden of proof that there has been an implied dedication even of that portion of the property not covered by this step.

A. Lee Knowles, seventy-one years of age, testified on behalf of the appellee that he had been in business for a number of years, between 1884 and 1900, in both of the buildings located on the property later acquired by the appellee; that the whole of the setback space between the

front of the buildings and the street line (including both that portion covered by the concrete step and the other portion as well) had been used by the occupants of the premises for the display of merchandise, and that the same was true with reference to the space in front of the adjoining buildings.

Charles R. Knowles, sixty-seven years of age, likewise testified that about 1886 he was in business in the storeroom located to the north of the concrete step; that the setback space had been used by him and the merchants in the adjoining buildings for the purpose of displaying their produce and merchandise; that he and the other occupants of these premises used this space as if it were a part of the rented premises; and that at one time he kept a table on this strip for the display of green vegetables and fruits.

S. P. Silling, sixty-eight years old, a former member of the city council, testified that he was, from about 1917 to 1922, a tenant of the building then occupying the southern portion of the property later acquired by the appellee; that the space in front of his store, now occupied by the concrete step, was used by him for the display of his merchandise, and that the occupants of the premises just north of appellee's property made the same use of that portion of the strip in front of their buildings.

This testimony showing the continued use of the strip in question by the occupants of the premises for their purposes is not directly contradicted. It is true the city showed that it was at one time the custom of merchants throughout the city to display their wares on the sidewalks; that this later was prohibited by an ordinance enacted in 1910; and that in 1915, pursuant to this ordinance, the occupants of the premises adjoining the strip in question were required to cease displaying their goods there. Yet, we think, the preponderance of the evidence is that, notwithstanding the ordinance and the efforts of the city to enforce it, the occupants of the premises continued to use the strip in question for their own purposes even as late as 1935.

■ In order for the city to sustain its claim to this property by dedication there must be proof of an intent on the part of the owner to dedicate the property, and proof of the acceptance of such dedication by the city's exercise of jurisdiction and dominion over it. The burden of proving both of these elements was on the city.

■ In the first place, we think the preponderance of the evidence does not show the necessary intent to dedicate the property to the public use. In fact, the only thing which it can be said that the owners of the property have done, upon which an implied dedication can rest, is that the strip has been paved uniformly with the sidewalk and that the public has been permitted to travel over it.

■ It is well settled that where, as here, the use of the property by the public is not exclusive of the owner's rights, but is consistent and in common therewith, such use by the public is no proof of an intention to dedicate the property to the public, but is permissive only. *Harris* v. *Commonwealth, supra;* 8 R. C. L., p. 904, sec. 29; 4 McQuillin, Mun. Corp. (2d Ed.), sec. 1689.

Accordingly we held in *Keppler* v. *City of Richmond, supra,* that the use by the public of a private alley, merely in common with the owner's use thereof, did not show an intention to dedicate it to the public. To the same effect is *MacCorkle* v. *City of Charleston, supra.*

■ Neither do we think that the city showed with the necessary clarity of proof that it had ever accepted this strip of property and exercised jurisdiction and dominion over it as one of its streets. There is no proof that the city expended any money on it, and there is positive evidence that it was unsuccessful in its efforts to prevent the use of the property for the private purposes of the occupants of the premises.

■ In many respects the case is quite similar to *Morlang* v. *City of Parkersburg,* 84 W. Va. 509, 100 S. E. 394, 7 A. L. R. 717. In the headnotes (prepared by the court) it is said:

"Dedication being an exceptional and peculiar mode of passing title to interest in land, the proof thereof must be full and clear; and the acts proved, which it is claimed constitute such dedication, must be inconsistent with any construction other than that of a dedication. Merely building the front of one's house back from the property line is alone not sufficient to prove intent to dedicate to the public the strip of land between the property line and the front of the house.

      \*      \*      \*      \*      \*      \*      \*

"Where the owner of property abutting upon a city street constructs the building upon his property 3½ feet back from the street line, and paves the same in the same manner as the sidewalk is paved, and permits the public using such sidewalk to also use such paved strip between the front of his building and the street line as a sidewalk, he will not be held to have thereby dedicated the same to the public by implication, unless it be further shown that the public authorities, with his knowledge, exercise acts of dominion thereon indicative of their belief that the same has been dedicated to the public."

In arriving at its conclusion the West Virginia court expressly approved the reasoning in *Keppler* v. *City of Richmond, supra.*

Therefore, we see that when the city's evidence is tested by well settled principles, it fails to show that there has been any implied dedication of the property in question to the public use.

Neither can the city's claim to the land in controversy, by prescription, be sustained under the evidence.

The distinction between dedication and prescription is this: Dedication, whether express or implied, rests upon the consent of the owner; whereas prescription is based on an adverse holding under color of right. 18 C. J., p. 40, sec. 3; 4 McQuillin, Mun. Corp. (2d Ed.), sec. 1663; Elliott on Roads and Streets (3d Ed.), secs. 191, 194.

"Under all of the authorities the user must be under a claim of right and must also be unequivocally adverse in order that the public may acquire the right in question by prescription." *Keppler* v. *City of Richmond, supra,* 124 Va. 592, at p. 604, 98 S. E. 747, 751.

As we have seen the evidence here does not show that the public user of the strip was "unequivocally adverse," but on the contrary shows that such use was permitted by the landowners and was in common with their private use. Such is not sufficient to sustain a right by prescription. *Terry* v. *McClung,* 104 Va. 599, 603, 52 S. E. 355; *Keppler* v. *City of Richmond, supra.*

The final contention of the city is that the property in question has become a part of the sidewalk by virtue of the language of the city charter, which provides that: "Whenever any street, alley or lane in said city shall have been opened to and used as such by the public for the period of five years, the same shall thereby become a street, alley or lane for public purposes, * * *." (Acts 1934, ch. 239, sec. 31, pp. 344, 355.)

In its brief the city says: "This charter provision merely reduces the prescriptive period to five years." But we have just seen that a prescriptive right to the strip in question must rest upon evidence of adverse and not merely a permissive use of the property. Where, as here, there is no proof of an adverse use it is immaterial whether the use be for a period of five or twenty years.

Furthermore, in *Keppler* v. *City of Richmond, supra,* a similar provision in the charter of the city of Richmond was before us. We there held (124 Va. 592, at p. 604, 98 S. E. 747, 751) that: "* * * such a charter provision requires the same evidence of dedication, to put it in operation, as the law requires to raise an implication of a common-law dedication from mere user of a way."

Our conclusion was there based upon the decision in *Strong* v. *City of Brooklyn,* 68 N. Y. 1, 16, wherein it was said: "We think that a correct interpretation of this act requires that there should be an intention on the part of

the owner, that his lands should become permanently subject to the public use for a street, before he can be said to have thrown them out thereto in the purview of the statute."

And yet we have already found that the evidence on behalf of the city is insufficient to support its claim of an implied dedication to it of the property in question.

On the whole our conclusion is that the decree appealed from is right. It is accordingly

*Affirmed.*