780 So.2d 673 (2000)
Ex parte Thijuan WILLIAMS.
(Re Thijuan Williams v. State).
1980425.
Supreme Court of Alabama.
February 11, 2000.
As Modified on Denial of Rehearing April 7, 2000.
Paul M. Harden, Sr., of Harden & Harden, Monroeville, for petitioner.
Bill Pryor, atty. gen., and Cedric B. Colvin, asst. atty. gen., for respondent.
PER CURIAM.
Thijuan Williams was convicted of robbery in the first degree and was sentenced to 10 years' imprisonment. The Court of Criminal Appeals, on October 2, 1998, affirmed, with an unpublished memorandum. Williams v. State, (No. CR-97-1165), 744 So.2d 957 (Ala.Crim.App.1998) (table). We *674 have granted Williams's petition for certiorari review. Williams argues (1) that his confession was the result of an illegal arrest; (2) that his confession, which was offered against him at trial, was made involuntarily, as the result of coercion; and (3) that the State failed to prove that in the commission of the charged crime Williams had a deadly weapon or dangerous instrument.
At trial, Eleanor Cooper testified that she entered the front of her store at approximately 7:15 a.m. on December 6, 1995, and was assaulted by a black man wearing a mask. Ms. Cooper said she began screaming and did not stop when the man told her to "shut up." She said the man then grabbed some canned "beans or peas from a shelf" and began hitting her with the can or cans. She said she saw a second man at the cash register and heard her attacker ask the second man if he "had it," and she said the men then left. Ms. Cooper received 20 stitches to close the wounds that she had suffered on her head and hands.
After hearing that there was a warrant out for his arrest, Williams voluntarily surrendered to police and was formally arrested on December 14, 1995. However, the warrant for Williams's arrest was not obtained until December 15, 1995. Williams was not questioned about his involvement in the robbery until 24 hours after he had been arrested; when questioned, he confessed to the robbery.
Williams contends that the trial court erred in admitting his confession, arguing that it was the result of an illegal arrest. He also claims that his confession was not voluntary, but, rather, was given in response to promises of leniency he says the sheriff made to him. Williams also argues that the trial court erred in denying his motion for a judgment of acquittal because, he says, the State failed to prove that at the time of the robbery he was armed with a deadly weapon or dangerous instrument. (One element of first-degree robbery is that the defendant was armed with a "deadly weapon or dangerous instrument." Ala.Code 1975, § 13A-8-41.)
In its unpublished memorandum, the Court of Criminal Appeals stated that a can of vegetables, used as the robbery victim says the robber in this case used a can (or cans) of peas or beans, can constitute a "dangerous weapon," within the meaning of that term as it is used in § 13A-8-41. We agree. We think it unnecessary to further address Williams's argument that he was not armed with a "deadly weapon or dangerous instrument."
Williams argues that his confession was the result of an illegal arrest. He asserts that he was arrested and held for 24 hours without probable cause. However, the record on appeal does not contain the affidavit supporting the warrant for Williams's arrest. Therefore, this Court does not know what information was contained in the affidavit and cannot determine whether that information was sufficient to establish probable cause for the arrest.
Williams also argues that his confession was not voluntary. Williams made a pretrial motion to suppress the confession. He alleged that on December 14, 1995, the day he was arrested, Deputy Pickens visited him in his jail cell. Williams testified that Deputy Pickens told him, "[I]f I ever catch you at forty-three or whateverI forgot the name of the hospital he say he going to put me in the hospital." Williams further testified that after his conversation with Deputy Pickens, he had a conversation with the sheriff. Williams testified that the sheriff told him:
"[S]ince this was my first time or whatever I was ready to go home. Told me since it was my first time or whatever, they would take it light on me.... After that, I kept asking, like, `If I tell you I did it,' I said, `I can go home?' He said, `Yeah, you can go on home. With your record,' [he] said, `won't too much happen. I give you my word.'"
*675 Williams says he confessed to the robbery after having those two conversations.
The State argues that the trial court properly admitted Williams's confession because, the State argues, Williams made it voluntarily after being given Miranda warnings, and it argues that Williams's testimony to the contrary lacked credibility. The Court of Criminal Appeals agreed with the State's argument, stating in its unpublished memorandum:
"The appellant initially testified that, prior to his meeting with the sheriff on December 15, [Deputy Sheriff Kevin] Cagle had played part of his codefendant's statement for him. He also testified that he did not sign the advice of rights and waiver forms in front of Deputy Cagle but instead signed them in the presence of the sheriff after the sheriff had told him to confess. However, on cross-examination, the appellant said that he had talked to the sheriff on December 14; he admitted that he had, in fact, signed the advice of rights and waiver forms in the presence of Deputy Cagle; and he admitted that he had signed them on December 14. Conflicts in the evidence and the credibility of the appellant were matters to be resolved by the trial court. Johnson v. State, 680 So.2d 1005 (Ala.Cr.App.1996). Based on the record, the trial court was within its discretion in determining that the appellant's testimony was not credible."
The statement in the unpublished memorandum amounts to a holding, in effect, that, even though the defendant testified without contradiction that his confession was the product of threats of violence by a deputy and promises of leniency by the sheriff, nonetheless, inconsistencies in his testimony on other topics diminished his credibility and thereby satisfied the burden on the State to prove the voluntary nature of the confession. The fact-finder owes a duty to reconcile the testimony so as to make the witnesses speak the truth, if the fact-finder can reasonably do so. City of West End v. Eaves, 152 Ala. 334, 44 So. 588 (1907). Thus, uncontradicted testimony of threats and promises, no matter how questionable the witness's credibility may be, would at least make a prima facie showing that the confession was involuntary, even if the burden of proof were on the defendant, as it is not. A fortiori, doubts about the defendant's credibility cannot satisfy the burden that is, by law, on the State to prove that the confession was voluntary.
"For a confession, or an inculpatory statement, to be admissible, the State must prove by a preponderance of the evidence that it was voluntary." McLeod v. State, 718 So.2d 727, 729 (Ala.1998). The only evidence the State presented to show that the confession was voluntary was Williams's signed waiver-of-rights form and the testimony of Deputy Cagle regarding Williams's signing the waiver-of-rights form. The State offered no evidence to dispute Williams's claim that his confession was the product of a threat by Deputy Pickens and a promise of leniency by the sheriff. Deputy Cagle's testimony simply stated that Deputy Cagle made no promises to Williams in order to secure the confession. However, Deputy Cagle was unable to provide testimony that disputes Williams's testimony regarding either the alleged threat or the alleged promise of leniency.
"The circumstances surrounding a prior illegal confession may in some cases carry over and taint a subsequent confession, thereby rendering it inadmissible, even if the accused has been advised of his Miranda rights prior to the second confession. In order for this causal chain to be severed, the second confession must be sufficiently an act of free will to purge the primary taint."
United States v. Lee, 699 F.2d 466, 468 (9th Cir.1982) (citations omitted), as quoted, with approval, in Ex parte Callahan, 471 So.2d 463, 467 (Ala.1985). In this present case, there had been no prior confession. However, Williams claims that he was threatened by a deputy sheriff and *676 was promised leniency by the sheriff if he would confess. Therefore, it was the State's burden to prove by a preponderance of the evidence that Williams voluntarily waived his rights and confessed. The State's production of the form indicating that Williams had waived his Miranda[1] rights is merely one step in the analysis. This Court must look at the totality of the circumstances. All this Court has before it is Williams's allegation that he was threatened and was promised leniency if he confessed. The State produced no evidence indicating that Deputy Pickens did not threaten Williams. Nor did the State produce any evidence indicating that the sheriff did not promise Williams that if he confessed he could "go on home" and that "won't too much happen" if he confessed. The State produced no evidence indicating that Williams waived his rights outside the context of the alleged threat of harm and the alleged promise of leniency.
This rule is well settled in Alabama:
"[T]he slightest menace or threat, or any hope engendered or encouraged that the prisoner's case will be lightened, meliorated, or more favorably dealt with if he will confess; either of these is enough to exclude the confession thereby superinduced. Any words spoken in the hearing of the prisoner which may, in their nature, generate such fear or hope render it not only proper but necessary that confessions made within a reasonable time afterwards shall be excluded, unless it is shown by clear and full proof that the confession was voluntarily made after all trace of hope or fear had been fully withdrawn or explained away and the mind of the prisoner made as free from bias and intimidation as if no attempt had ever been made to obtain such confessions."
Womack v. State, 281 Ala. 499, 507, 205 So.2d 579, 587 (1967). Because the State did not carry its burden, the trial court's determination that Williams's confession was voluntary was contrary to the great weight of the evidence. See Ex parte Matthews, 601 So.2d 52 (Ala.1992). Thus, his conviction is reversed, and this case is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOUSTON, COOK, LYONS, JOHNSTONE, and ENGLAND, JJ., concur.
MADDOX and SEE, JJ., dissent.
BROWN, J., recuses herself.[*]
MADDOX, Justice (dissenting).
I respectfully dissent. The majority concludes that Williams's testimony was undisputed. I disagree. Deputy Cagle, the questioning officer, testified that Williams, before he confessed, said that he had not been coerced nor promised anything regarding his statement. I believe this was a very sharp contradiction that created a factual issue best resolved by the trial court when it was considering whether the confession should be admitted.
On that point, I suggest that the law provides that the trier of fact is entitled to disregard a "witness's entire testimony" if the trier of fact "decides that [the] witness has been willfully untruthful on a material matter." Dill v. State, 723 So.2d 787, 803 (Ala.Crim.App.1998). Williams testified on direct examination that he confessed to the sheriff after the sheriff had promised him leniency. On cross-examination, however, Williams admitted that he never confessed to the sheriff, but that he confessed to Cagle on the day after he says the sheriff had promised him leniency. Thus, the trial court could have concluded that Williams was being willfully untruthful about a "material matter" and could have disregarded Williams's entire testimony as *677 being unworthy of belief. Accordingly, the trial court did not err in permitting the State to introduce Williams's confession.
SEE, J., concurs.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[*] Justice Brown was a member of the Court of Criminal Appeals when that court considered this case.