PRESENT: All the Justices

OLD DOMINION BOAT CLUB
                                                OPINION BY
v.        Record No. 130062        JUSTICE S. BERNARD GOODWYN
                                            October 31, 2013
ALEXANDRIA CITY COUNCIL,
ET AL.

            FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                    John J. McGrath, Jr., Judge Designate

        In this appeal, we consider whether the acquisition of a fee simple interest in a public way by a city, pursuant to a local ordinance, extinguishes a pre-existing easement over that way when there has been no implied or express dedication of that easement by its holder.

                                Background

        Old Dominion Boat Club (ODBC) filed an amended complaint against the City of Alexandria and Alexandria City Council (collectively, the City), as well as 106 Union Dublin, LLC and 106 Union Ireland, LLC (collectively, the Union parties), seeking to enforce a purported private easement over a public street, Wales Alley, after the City granted a special use permit and license to the Union parties, allowing the Union parties to construct an outdoor dining deck on Wales Alley. ODBC alleged that the outdoor dining deck, authorized by the City, would encroach upon an easement ODBC had been deeded over Wales Alley prior to its becoming a public street. ODBC sought a declaration of the existence of its vested easement and a

permanent injunction against the City and the Union parties prohibiting them from obstructing its easement.

In its final order, the Circuit Court of the City of Alexandria found that the fee simple interest in Wales Alley was dedicated to the City and the City accepted Wales Alley as a public way and therefore held authority over it, pursuant to City of Alexandria Charter Section 2.03(a), to "lay out, open, extend, widen, narrow or close" the alley that had become a public way. Although it had previously found that ODBC had never expressly or implicitly dedicated its easement to the City, the circuit court ruled that the City's acceptance of the fee simple interest extinguished ODBC's easement. The circuit court entered judgment for the City and the Union parties. ODBC appeals.

## Facts

The unchallenged factual background of this matter was thoroughly discussed by the circuit court in its Opinion and Order dated April 22, 2011 (the Opinion and Order), and is recounted here as relevant. The alleged "vested" easement relied upon by ODBC arises out of a deed of partition executed July 10, 1789 between John Fitzgerald of Alexandria, Virginia, and Valentine Peers of Port Tobacco, Maryland. The July 10, 1789 deed divided the land commonly or jointly owned by Fitzgerald and Peers according to a plat or drawing that was

apparently made part of the deed.[1]  In the July 10, 1789 deed,

after laying off the specific parcels that were being released

or conveyed to each of them as sole owners, the grantors

provided in the last paragraph of the deed as follows:

> and moreover the said parties do covenant assure and
> Confirm by these presents each to other the free use
> and passage of the several Streets and Alleys in
> common now left by them from their grounds for the
> more easy communication with the public main Streets
> and the river, Viz; One alley of twenty feet wide
> running from Water to Union Street, and one Street or
> Alley of thirty feet wide running from Union Street to
> the river . . . .

The property referred to as the "Street or Alley of thirty

feet wide" has been known as Wales Alley since at least the

nineteenth century.  Presently Wales Alley runs between Union

Street and the Strand.[2]  The easement was and purportedly

remains appurtenant to the parcels now owned by ODBC, a

successor in interest to John Fitzgerald, and 106 Union

Ireland, LLC, a successor in interest to Valentine Peers.

In the Opinion and Order, the circuit court found that

from the time of the original 1789 deed until approximately

---

[1] The copper plate version of the deed prepared by the scrivener contains the plat directly before the writing.  The deed allots various parcels of land by metes, bounds and monuments, and refers to such descriptions as "per plat above."

[2] Although the alley or street in question originally ended at the river, through accretion and fill there is now solid land at the eastern end of Wales Alley, which is called the Strand.

3

1970, there was relatively little known of the exact uses of Wales Alley. It was originally part of a bustling seafront that gradually declined as a port. The area became more of a heavy industrial center along the waterfront, featuring a torpedo factory, a cement plant and a Ford plant at various points in time. In 1935, ODBC bought its property. From 1935 until at least 1970, there were incidental references to Wales Alley as a private alley. Such notations were made in documents and maps maintained by the City of Alexandria.

In the spring of 1970, Dockside Sales, Inc. (Dockside Sales), 106 Union Ireland, LLC's predecessor in title, erected two wooden fences that blocked the full length and width of Wales Alley from Union Street to the Strand. ODBC took exception to the closing of Wales Alley, and on May 5, 1971, ODBC filed a bill of injunction against Dockside Sales in the Corporation Court of the City of Alexandria.[3] In 1972, the corporation court ruled "that Wales Alley is an established public way and that the Complainant [ODBC], as an adjoining owner, has a vested easement of way in Wales Alley." It ordered that the obstructions in Wales Alley be removed.

---

[3] This court was the predecessor of the Circuit Court of the City of Alexandria. See Netzer v. Reynolds, 231 Va. 444, 446, 345 S.E.2d 291, 292 (1986).

After 1972, there were various references to Wales Alley as a public alley. In the 1980s and 1990s, the City approved various site plans submitted by developers that required installation of landscaping and erection of lighting fixtures in Wales Alley. The City also approved a building expansion on the north side of Wales Alley.

In approximately 1990, the City paved Wales Alley, erected no parking signs and began issuing traffic citations for violations of the no parking signs. Also in 1990, the City permitted construction of a brick sidewalk of approximately four to five feet in width along a portion of the north side of Wales Alley. The City also erected a public street sign indicating the intersection of Wales Alley and Union Street. Additionally, from time to time the City repaired potholes in Wales Alley and frequently performed maintenance and repairs of the brick sidewalk along the north side of Wales Alley.

In May 2010, the Union parties applied for and were granted by the City a special use permit to operate a restaurant in a building adjacent to Wales Alley. Also, the City subsequently granted the Union parties a license to build an elevated deck on Wales Alley, which would obstruct a large portion of the alley. The City further declared that the alley would be open only to one-way vehicular traffic. This litigation followed.

After hearing the parties' evidence and arguments, the circuit court noted in its Opinion and Order that neither ODBC nor the Union parties claim a fee simple interest in Wales Alley. It found that Wales Alley had been used by the public as a public alley for over a hundred years, and the alley must be considered as having been dedicated by "long public use." The court also found that the City had exercised dominion and control over Wales Alley by paving it, repairing potholes, making numerous repairs to the brick sidewalk, posting public street signs and installing no parking signs, and that these activities were sufficient to prove an acceptance of the implied dedication of the fee simple interest in the property, pursuant to City of Alexandria Charter Section 2.03(a).

However, concerning ODBC's easement, the circuit court found that neither the City of Alexandria nor abutting landowners had interfered with ODBC's use of its 30-foot easement over Wales Alley. It went on to state that "[t]here is nothing in the evidence which would show clearly or otherwise, that ODBC and its predecessors in title had taken or permitted any action or entered into any contract which would indicate that they had 'dedicated' their right to a thirty foot right of way over Wales Alley." The circuit court noted that

> [t]he mere fact that ODBC has not protested the
> public use of Wales Alley for a pedestrian and
> vehicular passage between Union Street and The Strand

6

is not an abandonment of their vested easement or an indication that their "easement" was being "dedicated" to the public. It, at most, was a "dedication" by long public use of whatever rights it may have had in the fee of the land which was used as an alley.

In concluding its Opinion and Order, the circuit court acknowledged but declined to resolve the conflicts between the City's ownership rights and ODBC's easement rights in Wales Alley. Instead, it resolved the case in ODBC's favor by ruling that the Union parties were barred, by the doctrine of res judicata, from constructing the deck because the Union parties were successors in interest to Dockside Sales, the defendant in the 1972 case that had been enjoined from blocking the alley. The City and the Union parties appealed that decision to this Court.

In an order dated May 25, 2012, this Court reversed the circuit court, holding that the 1972 "Dockside Sales" case did not provide a basis under the doctrine of res judicata for determining the City's rights in the alley and, by extension, what rights they might license to the Union parties. The case was remanded to the circuit court for further proceedings.

On remand, with the agreement of the parties, the circuit court took no additional evidence but allowed additional argument and briefing. Thereafter, in an Opinion and Order dated October 9, 2012, the circuit court stated:

7

> For the reasons stated in this Court's earlier Opinion and Order dated April 22, 2011 (pp. 9-17), the Court finds that ODBC's interest in Wales Alley was dedicated to the City and that interest has been accepted by the City of Alexandria. Therefore, the City has the authority to, inter alia, "lay out, open, extend, widen, narrow . . . or close . . ." the alleys of the City, including Wales Alley.

The circuit court noted that what, if any, compensation to which ODBC might be entitled for the extinguishment or curtailment of its rights in Wales Alley was not before the court. The circuit court dismissed ODBC's complaint and entered judgment for the City and the Union parties. ODBC filed a motion seeking reconsideration of this ruling, which was denied on October 30, 2012.

## Analysis

ODBC claims that the circuit court erred in failing to recognize its continuing vested easement in Wales Alley. It also claims that the circuit court erred in failing to enjoin the City from authorizing others to make obstructions in Wales Alley and in failing to enjoin the City or the Union parties from erecting any structures in Wales Alley.

The City and the Union parties claim that any private rights held by ODBC did not survive dedication pursuant to City

8

of Alexandria Charter Section 2.03(a)[4] and acceptance of the fee simple interest in the alley as a public way by the City. They claim that once a jurisdiction accepts dedication of a right-of-way, putative private access rights are extinguished and the holder of an easement is only entitled to reasonable and adequate access, like any other member of the public.

It is undisputed that the fee simple interest in Wales Alley was dedicated to and accepted by the City of Alexandria. The fee simple interest in Wales Alley belongs to the City.

---

[4] Section 2.03 of the City of Alexandria Charter states:

> In addition to the powers granted by other sections of this charter the city shall have the power:
>
> (a) To lay out, open, extend, widen, narrow, establish or change the grade, or close, vacate, abandon, construct, pave, curb, gutter, grade, regrade, adorn with shade trees, otherwise improve, maintain, repair, clean and light streets, including limited access or express highways, alleys, bridges, viaducts, subways and underpasses, and make and improve walkways upon streets and improve and pave alleys within the city; and the city shall have the same power and authority over any street, alley or other public place ceded or conveyed to the city or dedicated or devoted to public use as over other streets, alleys and other public places; provided, further, that whenever any ground shall have been opened to and used by the public as a street or alley for ten years it shall be considered as dedicated to the public and the city shall have the same authority and jurisdiction over and right and interest therein as it has over other streets.

(Emphasis added.)

9

Whether ODBC's easement was extinguished upon dedication of the fee simple interest of the servient property is a question of law we review de novo. Westgate at Williamsburg Condo. Ass'n v. Philip Richardson Co., 270 Va. 566, 574, 621 S.E.2d 114, 118 (2005) ("We review questions of law de novo, including those situations where there is a mixed question of law and fact.").

An easement is "a property interest distinct from the fee and an encumbrance upon it." Ocean Island Inn, Inc. v. City of Va. Beach, 216 Va. 474, 476, 220 S.E.2d 247, 250 (1975). A dedication is a gift to the public. Lynchburg Traction & Light Co. v. City of Lynchburg, 142 Va. 255, 266, 128 S.E. 606, 609 (1925). "The donee cannot dictate the terms of the gift." Id. "Common law dedication involves the precise right offered, not a different right." Burns v. Board of Supervisors, 226 Va. 506, 516, 312 S.E.2d 731, 736 (1984). Thus, the dedication and acceptance of the fee simple interest in Wales Alley only transferred that fee simple interest to the City subject to the pre-existing easement.

In City of Staunton v. Augusta Corp., 169 Va. 424, 438, 193 S.E. 695, 700 (1937), this Court stated that a charter provision such as City of Alexandria Charter Section 2.03(a) "requires the same evidence of dedication, to put it in operation, as the law requires to raise an implication of a common-law dedication from mere user of a way." (Quoting

10

Keppler v. City of Richmond, 124 Va. 592, 604, 98 S.E. 747, 751 (1919)).  For ODBC's easement interest in Wales Alley to be transferred to the City pursuant to City of Alexandria Charter Section 2.03(a), it must be proven that there was an implied or express dedication of that easement to the City by ODBC.  The parties agree that there was no express dedication.

Implication of a common law dedication may be found based upon "long use by the public of the land claimed to be dedicated."  City of Staunton, 169 Va. at 433, 193 S.E. at 698. But,

> [t]o constitute a dedication, there must be an intention to appropriate the land for the use and benefit of the public.  The intention, the animus dedicandi, is the vital principle of the doctrine of dedication.  The acts and declarations of the landowner indicating such intention must be unmistakable in their purpose, and decisive in their character, to have that effect.

Id. (quoting Harris v. Commonwealth, 61 Va. (20 Gratt.) 833, 837 (1871)).

> User, in order to constitute proof of dedication, must have been by the public, and adverse to and exclusive of the use and enjoyment of the property by the proprietors, and not a mere use by the public under and in connection with its use by the owners in any manner desired by them; otherwise it is insufficient, no matter how far beyond the period of limitations it is extended.

Id. (quoting 8 Ruling Case Law § 29, at 904 (William M. McKinney & Burdett A. Rich eds., 1915)); see 3232 Page Ave. Condo. Unit Owners Ass'n v. City of Va. Beach, 284 Va. 639,

11

649, 735 S.E.2d 672, 677 (2012) ("Where, in addition to long-term public use, there has been an acquiescence in the exercise of dominion and control over the property," dedication may also be implied.).

ODBC enjoys not title to Wales Alley, but rather an easement for "the free use and passage" across it. That was and is the full extent of ODBC's property interest, and thus it only had authority to object to actions which prevented that limited use. ODBC was not entitled to dominion and control over the easement. Evidence of use hostile or adverse to, or which interfered with, ODBC's "free use and passage" easement would be necessary to prove an implied dedication of the easement.

After hearing evidence in this case, the circuit court found that neither the City of Alexandria nor abutting landowners had interfered with ODBC's use of its 30-foot easement over Wales Alley, and that ODBC had not abandoned its easement by acquiescing in the public's concurrent use of the alley for pedestrian and vehicular passage. These findings are not disputed. Thus, the evidence in this case is insufficient to support a finding that ODBC expressly or impliedly dedicated its easement to the City. Therefore, pursuant to City of Staunton and Keppler, City of Alexandria Charter Section 2.03(a) could not have operated to extinguish ODBC's interest

12

in its easement over Wales Alley, or to transfer such easement rights to the City.

Alternatively, the City and the Union parties claim that ODBC's easement over Wales Alley was extinguished when its purpose was fulfilled and it was no longer necessary. They cite American Oil Co. v. Leaman, 199 Va. 637, 101 S.E.2d 540 (1958), as authority for that proposition. They claim that "once the alley became public, the risk of private interference with access to the adjoining public streets ended, so the purpose of [ODBC's] easement was no longer relevant," and it was extinguished.

We believe the City and Union parties misconstrue our precedent. In American Oil Co., we said:

> Easements once created may be extinguished in the following ways: (1) By a cessation of the purposes for which the easement was created; . . . .
>
> If the particular purpose for which the easement is granted is fulfilled or otherwise ceases to exist, the easement also falls to the ground.

199 Va. at 652, 101 S.E.2d at 552 (quoting 1 Frederick D.G. Ribble, Minor on Real Property §§ 106-107, at 145-46 (2d ed. 1928)).

In American Oil Co., we further explained the principle as follows:

> It has been said that when an easement is created for a particular purpose, it comes to an end upon a cessation of that purpose, which means, apparently,

13

> that an easement which is created to endure only so long as a particular purpose is subserved by its exercise, comes to an end when it can no longer subserve such purpose. The question then is, in each case, what is the particular purpose to be subserved by the easement, and this, in the case of an easement created by grant is a question of intention.

Id. at 652-53, 101 S.E.2d at 552 (quoting 3 Herbert T. Tiffany, The Law of Real Property § 817, at 368 (Basil Jones, ed., 3d ed. 1939)). Additionally, realizing we were dealing with an issue of first impression, we specifically noted that "[t]he extinguishment of easements by cessation of the purpose for which they were granted" has been recognized by numerous texts and decisions, and we provided citations thereto. Id. at 653, 101 S.E.2d at 552.

Cessation of purpose is essential. Without cessation of the purpose for which the easement was created, an express easement does not end when its purpose is simply fulfilled or when it is no longer necessary unless its express terms so state.

An easement's purpose depends upon the intent that can be determined from the deed granting the easement. See id. at 652, 101 S.E.2d at 552. When an easement is granted by a deed, unless it is ambiguous, "the rights of the parties must be ascertained from the words of the deed." Gordon v. Hoy, 211 Va. 539, 541, 178 S.E.2d 495, 496 (1971).

In American Oil Co., the deed stated that an "easement of right of way" had been granted "to be used . . . as a means of ingress and egress . . . out to the public highway known as Goodwyn's Neck Road." 199 Va. at 643-44, 101 S.E.2d at 546. The public highway the easement was created to reach was later permanently closed by the county. Another new highway was opened, but the new highway did not connect with the easement, turning the easement into a cul-de-sac. Id. at 649, 652, 101 S.E.2d at 550, 551-52. This Court held that because the easement's purpose was to provide access to a highway, the easement was extinguished when the highway was closed because the easement could no longer serve its purpose. Id. at 652-53, 101 S.E.2d at 551-52.

In Pyramid Development v. D&J Associates, 262 Va. 750, 553 S.E.2d 725 (2001), the relevant deed granted an easement "to use in common the said spur tracks and sidings, and so much of the property . . . abutting said spur tracks and sidings as may be necessary to afford the property hereby conveyed . . . free and convenient access to and use of the said spur tracks and sidings." Id. at 755, 553 S.E.2d at 728 (internal citations omitted). We held that the language of the deed was not ambiguous and that "the purpose of the easement was expressly limited to allowing access to the spur tracks and sidings, and nothing more." Id. Therefore, "[w]hen the rail service was

15

discontinued, the purpose of the easement, which was to allow access to [and use of] the spur tracks and sidings, ceased to exist," and the easement was extinguished. Id. at 756, 553 S.E.2d at 728-29.

In this instance, the relevant deed provided for a 30-foot easement across what is now known as Wales Alley. The deed stated that its purpose was to provide "free use and passage of the several Streets and Alleys . . . for the more easy communication with the public main Streets and the river." The continuing purpose of the easement is to provide more easy communication with the public main streets. Changing Wales Alley to a public street does not result in a cessation of the purpose of the easement; it merely facilitates the easement in continuing to fulfill its ongoing purpose. Because the conversion of Wales Alley to a public street did not result in a cessation of the purpose for which the easement was granted, ODBC's easement over Wales Alley was not extinguished when Wales Alley became a public street. Therefore, we hold that the circuit court erred in failing to recognize ODBC's continuing vested easement in Wales Alley.

## Conclusion

Accordingly, for the reasons stated above, the judgment of the circuit court will be reversed. We hold that ODBC has a

16

vested easement over Wales Alley and remand the case to the circuit court for entry of appropriate injunctive relief.

                                        <u>Reversed and remanded.</u>